# Law and Equity

.IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

---

### MARY SIEMAN *vs.* MARY AUSTIN and others.

A piece of land was conveyed by W. and wife to Y., in March, 1847, by an absolute deed. But the purchase was made, and the deed taken, under an understanding and agreement between Y. and the parents of the plaintiff, S. that it should be taken and held for the benefit of the plaintiff, who was then an infant and knew nothing of the transaction. The grantors, wishing to invest $1000 for her, they negotiated the purchase of the property in question, and procured Y. to take the title, he agreeing to hold it for her benefit, and at a future day to convey the property to her. Y. paid no part of the consideration, nor did he ever assert any actual ownership of the land, or expect or intend to claim any title in hostility to the plaintiff, or to the trust or agreement under which he took the title. But of this agreement no written evidence existed, nor any written declaration of a trust for the plaintiff. The possession of the property, and the enjoyment of its profits, were had and taken by the plaintiff's parents, in accordance with the actual ownership. On the 5th of March, 1849, S. recovered a judgment against Y. which was duly docketed. In May, 1853, Y. and his wife conveyed the land, in pursuance of the trust, and the intention of all the parties, to the plaintiff. On the 20th of June, in the same year, Y. being examined in proceedings supplementary to the execution under the judgment of S. testified to the above facts. After this, on the 23d of August, 1853, all the right and title of Y. in and to the premises was sold, under an execution issued on the

Sieman *v.* Austin.

S. judgment. A. became the purchaser, and subsequently assigned the certificate which he received from the sheriff, on that sale, to the defendant, and the sheriff made his deed of the premises to the latter. A. paid S. for the judgment by giving him credit in an account which he had against S. For the assignment and subsequent deed to the defendant, no consideration was paid by her.

*Held,* 1. That upon the payment of the money for the plaintiff while she was an infant, and without her knowledge, the consequent conveyance to Y. and his agreement to hold for her and convey to her, Y. became a trustee for the plaintiff.

2. That this trust being a creation of law, not resting on the parol agreement, but on all the facts and the payment of the money under the agreement, was not within the statute of frauds.

3. That it was not a resulting trust, such as is forbidden by section 51 of the statute of uses and trusts.

4. That even if the trust could not have been enforced had Y. denied its existence, yet he having not only confessed but executed it, the title, thus made and supported by such equities, was paramount to the general liens of Y.'s judgment creditors, although antecedent in time to the conveyance made in performance of the trust.

5. That the trust was not one resulting from the payment of purchase money only, and measured by that payment, but it affected the entire estate.

6. That it was a trust to take the title to the land, to hold it for the plaintiff and finally convey it to her; and that the claims of Y.'s creditors could not attach at all upon land which had been acquired and held under such a trust, after it should be properly established or executed. LOTT, J. dissented.

When a trustee has admitted and acted upon the trust, and has conveyed the property to its true and equitable owner, it cannot be tolerated that the creditors of the trustee should question the title, or attempt to assert their lien upon what was really never his. *Per* EMOTT, J.

A person claiming to be the real owner of premises, by virtue of a conveyance to him in fee, may ask the interposition of a court of equity to restrain the prosecution of an action of ejectment brought by one claiming under a sheriff's deed which vests an apparently perfect title in the grantee; and to have such sheriff's deed delivered up and canceled, as being a cloud upon the plaintiff's title.

APPEAL from a judgment entered upon the report of a referee.

EMOTT, J. The plaintiff brought this suit to restrain the prosecution of an ejectment by the defendant Mary Austin, and to have a sheriff's deed of certain premises in Brooklyn

Sieman *v.* Austin.

cancelled and delivered up. A legal and an apparently per-
fect title was vested in the defendant Mary Austin by this
deed, but the plaintiff sets up paramount equities, and avers
that upon the facts as alleged and proved in the court below,
she is the true owner of the property, and ought to be quieted
in its enjoyment. Assuming these equities to exist, and this
ownership to be established, she has a right to maintain the
present action. It is objected that because under the present
system of procedure an equitable defense may be pleaded, and
even affirmative relief asked, in an answer to an action of
ejectment upon a legal title, therefore this action cannot be
maintained. This consequence, however, does not follow,
even where there are no other parties in court or to be affected
by the judgment than the two .persons who claim to be the
holders respectively of the legal and equitable titles, and still
less under circumstances like those of the present case. The
plaintiff's equitable interest has been perfected by a convey-
ance to her from the person who held the legal estate, as she
alleges, as her trustee. That conveyance, however, was sub-
sequent to the judgment under which the defendant Mary
Austin claims title. Admitting, therefore, that the plaintiff
is the real owner of the premises, the sheriff's deed made upon
the sale on this judgment is a cloud upon her title, and she
may ask the interposition of a court of equity to have this
cloud removed, as well as to stay all proceedings to assert a
title hostile to her own. Although perhaps she may, it never
has been held that she must, do this as a defense to a suit at
law to enforce the hostile title. The converse of the propo-
sition has been decided as to certain equitable defenses; that
is, such equities have been permitted to be interposed as de-
fenses under the code, instead of compelling parties to resort
to a separate suit as formerly. But when a case is brought
within a recognized head of equity jurisdiction and affirma-
tive relief is asked, there can be no good reason given why
this may not be done by a proper cross-action at the suit of
the party claiming it. Besides, in the present case there are

Sieman *v.* Austin.

other parties to the present action who are to be affected by the judgment asked, besides the plaintiff in the original ejectment suit. The judgment against George Youngs, under which the premises in question were sold, and through which the plaintiff in the ejectment will make title, is a cloud upon the title of the present plaintiff, as well as the sheriff's deed, and if she is entitled to have the latter cancelled she is entitled to some proper relief to prevent any future enforcement or even apparent lien of the former against her land. She has therefore made the plaintiff in that judgment and his immediate assignee, through whom it passed to the purchaser at the sheriff's sale, parties to the present suit. She alleges that neither of the latter are purchasers for value, and she thus presents a case which could not be fully determined in the original action.

The land in question was conveyed to George Youngs by Frederic Weiss and wife in March, 1847, by an absolute deed. The evidence however clearly establishes that the purchase was made, and this deed taken, under an understanding and agreement between Youngs and the parents of the plaintiff that it should be taken and held for the benefit of the present plaintiff. It was the intention of her parents to invest for her $1000 of money which apparently belonged to her mother. They negotiated the purchase of this property with that design, and procured Youngs to take the title, he agreeing to hold it for her benefit, and at a future day to convey the property to her. The motive which led to this arrangement is not very obvious, perhaps it is not very material, inasmuch as the transaction is not attacked by creditors of the plaintiff's father, and its good faith as to persons in that position is not in question. Perhaps this course may have been adopted on account of the infancy of the plaintiff, and her consequent disability to manage or dispose of the property, if that were contemplated. The plaintiff was at the time under age, and she was also ignorant of the transaction until long after it had occurred. She was not aware, as I under-

Sieman *v.* Austin.

stand the case, either that the money or the land was intended for her, or of the disposition which was made of the title to the latter. The consideration for the purchase was $2000, of which one half was advanced for the plaintiff's benefit, and paid to the grantor by her father or mother, and the other half was raised by a mortgage on the land. Youngs paid no part of it, nor did he ever assert any actual ownership of the lands, or expect or intend to claim any title in hostility to the plaintiff, or to the trust or agreement under which he took the title. Of this agreement, however, no written evidence existed, nor any written declaration of a trust for the plaintiff. On the 5th day of March, 1849, one Morris Schurck recovered a judgment against George Youngs, in the superior court of New York, for $182.47, which was properly docketed in King's county on the 6th day of the same month. At this time Youngs held the legal title to the property, but no steps were taken to reach it until long afterwards. In May, 1853, Youngs and his wife conveyed, in pursuance of the trust and the intention of all the parties, as they say, to Mary Sieman, the plaintiff. Their deed was dated May 2d, acknowledged May 11th, and recorded May 13th, 1853. On the 20th of June in the same year, Youngs was examined in proceedings supplementary to the execution under the judgment of Schurck, and testified that he never had any interest in this property; that Sieman bought it and had the conveyance made to him, Youngs, and that he had some weeks before conveyed it to Mary Sieman. After this, on the 23d of August, 1858, all the right and title of Youngs was sold, under an execution issued on the Schurck judgment, to William Austin, who was the plaintiff's attorney in that judgment, and had on the 20th of June preceding become its owner by assignment. William Austin assigned the certificate which he received from the sheriff on this sale to the defendant Mary Austin, and on the 8th of December, 1854, the sheriff made his deed of the premises to Mary Austin. William Austin paid Schurck for the judgment by giving him

credit in an account which he had against him for professional services. Mary Austin is a sister of William Austin, and the assignment to her and subsequent conveyance were made without any consideration given by her. She admits in her answer that the only consideration of the assignment of the certificate to her by her brother was "natural affection." There is therefore no proof of the payment of any money by either of these persons, as purchasers: all that appears to have been given for the purchase is the allowance of its amount upon a precedent debt. It will be seen, also, that before the sale by the sheriff, and of course long before his deed, Austin had actual notice that Youngs was never the real or equitable owner of the land; that he had held the title at the request of the Siemans, for their daughter the plaintiff, and that he had conveyed it to her. Before the sale, also, and indeed before the assignment of the judgment to Austin, Youngs had in fact executed the deed to Mary Sieman and it had been recorded. In addition to this, the possession of the property and enjoyment of its profits had always been taken by the Siemans, in accordance with the actual ownership, and this was the case when Schurck recovered and docketed his judgment. Unquestionably these acts and notices by Youngs, and this course of conduct of the parties with reference to the land, were sufficient to fix upon William Austin notice of the trust, and to affect him and his title or that of his assignor with all the equities which the plaintiff can establish, as far as the rights of the Austins are to be referred to their purchase at the sheriff's sale. In addition to this, they were not purchasers for value, since they parted with nothing at the time, and the land was subject to all equities in their hands, even without notice of them.

It must be borne in mind that the present controversy is between the plaintiff and a creditor of Youngs, or a party deriving title through such a creditor. Whether the creditors of George Sieman, the father of the plaintiff, could have impeached the title of Youngs or of the plaintiff, or defeated

the trust, is a very different question from that which arises in this·suit. No. part of this transaction can be charged to be a fraud upon the creditors of Youngs. There is nothing to show that he incurred debts, or obtained credit, upon the faith of this property. If his creditors do not obtain it they are in no worse position than before, while if the law subjects it to the lien of their judgments or the payment of their debts, they profit by the voluntary act of those who placed the title to this land in Youngs, without any consideration, and for the benefit of a third person not a party to the transaction.

If this money had been advanced by George Sieman for the benefit of the plaintiff, and the title taken to Youngs without any express agreement or undertaking on his part, a trust would have resulted from the payment of the purchase money, but for the interference of the legislature in the present statute of trusts. (1 *R. S.* 728, § 51.) The same result would have followed had the money been paid and title taken with an agreement among all parties—the person advancing the money, the grantor of the title, and the intended *cestui que trust.* (*See Boyd* v. *McLean,* 1 *John. Ch.* 582.) Nor can it be denied that it would have been grossly inequitable and unjust for Youngs, if he had been so disposed, to have retained this property for his own benefit, and set the plaintiff at defiance, when the whole consideration had proceeded from her or those who advanced it for her, and he had expressly agreed to hold the title as her trustee, and ultimately surrender it to her. The statute of frauds could not have been in the way of the enforcement of such a trust, whether considered as a technical resulting trust, or as the creation of equity acting on the conscience of the parties and following their own agreement. "The statute of frauds," said Lord Keeper Henley, in *Bartlett* v. *Pickersgill,* (1 *Eden,* 515,) "says there shall be no trust of land unless by memorandum in writing, except such trusts as arise by operation of law." That was the case of the employment of a man to purchase a piece of land for another, and he went and purchased for

himself and paid for it with his own money. The lord keeper dismissed the bill which was filed to reach the land, on the ground that there was nothing but a parol agreement and no purchase money paid by the party claiming the title. Cases of this description often occur, and some of them are hard cases, or at least cases of extremely unconscientious conduct by the person employed as agent, and of the consequent loss of a desirable purchase by his employee. But the statute of frauds is clearly in the way of any relief, unless the person purchasing was at the time, and independently of the particular transaction, in a relation to the person claiming the benefit of the purchase, which disqualified him from acting for his own separate advantage in the matter, as in cases of partners or the like; or unless the purchase was made with the money of the person asserting the trust; or unless there was actual fraud used to secure the purchase by the agent, and prevent the principal from protecting his own interests. Where however the purchase is made with the money of an-- other, under any circumstances, if a trust does not result, or is not implied or created, as the law now stands, it is not in consequence of the statute of frauds. The provisions of the present statute exempt from its operation " trusts created by act or operation of law," (2 *R. S.* 134, § 6,) and again a " trust arising by implication or operation of law." (*Id.* § 7.) The payment of the money is sufficient to occasion a trust, for when that is found, it is not a case of a naked parol declaration of trust, or agreement to convey, or to create an estate. The payment of purchase money is uniformly sufficient to take a verbal agreement to convey or create any estate in lands out of the statute, where it would be a fraud and hardship upon the party unless the agreement were executed. (*See Malins* v. *Brown,* 4 *Comst.* 403.)

Nor does it weaken the case, or expose it in any greater degree to the prohibitions of the statute of frauds, that the payment of the money by or for the *cestui que trust,* and the contemporaneous conveyance to the trustee, were accompanied

Sieman *v.* Austin.

by a verbal agreement on the part of the trustee, that he would hold and convey the property for a third person in accordance with the intention of the parties. The law will not indeed permit a trust to be declared or created by a mere verbal declaration of this intention, or a verbal agreement to do any act in the future. But where a state of facts is proved which establishes an equity independent of any agreement, evidence of such an agreement, although altogether verbal, does but define and determine the equity.

But it is supposed that the statute of trusts is in the way of any enforcement of such a trust as the plaintiff asserts. It is said that this trust, if it existed at all, was a technical resulting trust within the 51st section of the chapter of uses and trusts, (1 *R. S.* 728,) and not within the exception in the 53d section. In *Hosford* v. *Merwin*, (5 *Barb.* 51,) Judge Harris has discussed the scope and operation as well as the effect of this statute. He holds, in that case, and it is a view strongly supported by the revisers' notes to these sections, that the operation of this statute is restricted to cases where the party claiming the benefit of the trust himself created it, and that it does not extend to trusts created by one person for the benefit of another, without his knowledge, and subsequently accepted by him. The object of the revisers in proposing these provisions seems to have been twofold; to effectually prohibit formal trusts, and to prevent frauds which men purchasing lands for their own benefit may reasonably be supposed to intend if they take the title in the name of another. The case of *Hosford* v. *Merwin* was a case of a conveyance to one person for the joint benefit of himself and another, both being sureties of the grantor, and the person not named in the conveyance being ignorant of the transaction, until after it took place, and then assuming an additional debt of the grantor in consideration of the deed. The judge says that such a trust is not prohibited by the statute, but falls within the class of trusts which are described in the books as arising or resulting by implication of law, resting upon the ob-

vious though insufficiently declared intention of the parties, or upon the fraud and unconscientious dealing, which the enforcement of a trust is necessary to prevent. This reasoning is applicable to such a case as that now before us, where the trust is not asserted by the party who created it, but arises from the payment of the money, the acceptance of the deed by the grantee, and his agreement to fulfill the design of the person who paid the consideration and to hold the title in trust for a third person. Thus the person who asserts the trust neither paid the money, nor consented to the conveyance to the trustee, and therefore an essential element is wanting to bring the case under either section.

The Austins are not, in the most favorable aspect of their case, in a position to assert any other rights than such as belonged to Youngs. They simply stand in his shoes, and if the trust or agreement under and in consequence of which he received the title to these lands, could have been enforced against him, it may be also against them. This is the aspect in which the case would be presented if nothing had been done by Youngs with the land, and his interest had been sold under a judgment against him while he continued the holder of the legal title. My impression is strong that neither he, nor purchasers from him with notice, could resist the enforcement of the plaintiff's equities.

It is not, however, necessary to determine that question, nor perhaps to decide whether this is to be regarded as a trust strictly resulting, or implied by law, or resting on the agreement of the parties. If the trust was founded upon the payment of the purchase money in behalf of the plaintiff, it was expressed by the agreement of Youngs, as he testifies to it. If that trust had been expressed in the deed which was made to him, the whole estate, legal as well as equitable, would have passed to Mary Sieman by the effect of the 49th section of the statute of uses, and nothing would have been vested in the trustee. As it rested however altogether in parol evidence, if Youngs had retained the title the question

Sieman *v.* Austin.

would have arisen between purchasers under this judgment and the plaintiff, whether the trust could be enforced. But before the sale by the sheriff, as we have seen, Youngs conveyed the property to the plaintiff. This was a complete execution as well as admission of the. trust by Youngs. After this, it is obvious that he could not have been heard to question his own deed, or to allege the invalidity of a trust which he had first undertaken and then executed, or the insufficiency of the evidence. to establish it. If the Austins are to be regarded as acquiring only the rights of Youngs—what they would have taken under a quit-claim deed from him at the time of the sheriff's sale—then they must come under the same rule. Can the lien of the judgment overreach the plaintiff's equities, or give the purchasers who trace their title to it, a different position in respect to the plaintiff than that of purchasers at the time of the sheriff's sale?

In the case of *Jackson* v. *Post*, (15 *Wend.* 588, 596) this court considered the effect of a judgment and sheriff's deed as against a purchaser previous to the sale, whose deed was unrecorded. That was a question of legal notice, undoubtedly, and the judgment would not have held against a previous unrecorded deed; but it establishes the principle that the title at the sheriff's sale does not relate to the date of the judgment. The court say : "The sheriff's deed had the same force and efficacy as a quit-claim deed from the defendant of the same date, and having notice he purchased with as full knowledge of the plaintiff's deed as if it had been recorded. In such cases we consider the lien of the judgment as of no force by way of giving priority : it is the sale which is regarded as effectual, and the lien is not regarded as an incumbrance but only as an ingredient in the conveyance." In *White* v. *Carpenter*, (2 *Paige*, 217,) one Sackett had received a conveyance of property, absolute on its face, but shown by contemporaneous writings and other evidence to have been made in trust to sell or mortgage in order to raise $3000 for

one Willard. The plaintiff claimed to control the fund which had been produced by a sale of the premises in partition, by virtue of the lien of a judgment against Sackett, and Willard claimed sufficient of the fund to satisfy his $3000 under his equities. Chancellor Walworth, upon a rehearing of the cause, held that the equitable lien must prevail over the judgment. His opinion clearly asserts the principle that the general lien of a judgment is controlled by equity, so as to protect those who are entitled to an equitable interest in the lands. In the *Matter of Howe,* (1 *Paige,* 125,) the chancellor examines the English cases, and shows that the uniform rule is that neither general assignees, nor assignees in bankruptcy, nor judgment creditors, can be relieved against a prior equity. There must be a purchase and a payment of value without notice of the trust, before this can be defeated. The same principle will be found in the recent cases of *Buchan* v. *Sumner,* (2 *Barb. Ch.* 207,) and *Wilkes* v. *Harper,* (*Id.* 350.) And in *Arnold* v. *Patrick,* (6 *Paige,* 310,) the lien of a vendor, for unpaid purchase money, was enforced against a person who had bid in the property under his own judgment, just as William Austin did, but who took the sheriff's deed without notice of the prior equity. This purchase was held not to be a purchase for value, as he paid no new consideration.

If the considerations which have been adverted to establish an equity in the plaintiff which could have been enforced against Youngs, had he never conveyed to the plaintiff, then these principles are decisive of the case. But if they do not, or conceding that these lands could not have been recovered from Youngs had he chosen to resist the plaintiff's claim, that will not enable the defendant to resist it after Youngs had admitted and executed the trust, and removed the defect in the plaintiff's equity, or rather in the proof of it. For there is no doubt that Youngs was morally bound to surrender and convey these premises to the plaintiff; that she was clearly and exclusively entitled to them; and that

Sieman *v.* Austin.

HARVARD LAW SCHOOL LIBRARY

neither the original agreement nor its execution, by placing the legal title in her, was a fraud upon any one. If this agreement or trust had been expressed in writing, it would evidently have been valid and effectual, at least to protect the plaintiff from the creditors of Youngs. Now if the statute of frauds would have been in the way of the subjection of this property to the trust, if Youngs had never recognized or acted upon it, that was a defect in the evidence of the trust, and not in the nature of the trust itself. The law refuses its aid to enforce agreements creating trusts or charges upon lands, when they rest altogether in parol, not because the trusts are therefore void, but because it will not permit them to be proved by such evidence. But when a person who has received the title to lands purchased for the benefit of another, although without having declared the fact in writing, recognizes and fulfills the trust, it is not the duty of a court to deny its existence. The trustee may admit the facts in an action, dispense with proof, and thus authorize the court to establish and enforce the rights of the *cestui que trust*. If he does not plead the statute he waives its protection. If he fulfills the trust by conveying the property to the true owner, there is no rule of equity which will impeach the title thus acquired. Whether the trustee executes or only admits the trust, he supplies the defects in the proof of the original equities, and establishes not merely that his title is, but that it always has been, subject to those equities. If the deed from Youngs to the plaintiff cannot be upheld against the antecedent judgment against Youngs, it cannot be upheld against subsequent judgments, at least upon his debts then existing. The only consideration for this deed is the original equity of the plaintiff. But for that it is a voluntary conveyance, a gift from Youngs to the plaintiff, and so liable to impeachment by the creditors of the former, whenever these judgments are recovered. But if it be sustained by the equity of the plaintiff, that was not created by the deed, nor at the time of the deed. It was simply confessed

by the deed as having always existed, and being established it takes precedence at once of all general legal liens upon the estate of the trustee.

This is no fraud or injustice to the creditors of Youngs, for the property never belonged to the debtor, nor did he obtain credit, much less incur this particular debt upon its possession. A debtor will not be permitted to convey away his property, either real or personal, and relieve it from the incumbrances occasioned by his debts; but there is nothing to prevent his restoring to others their property if it has been placed in his hands. Nor is there any reason why the property of others should be subjected to the payment of his debts, if he is honest enough to refuse to avail himself of an opportunity to use it for that purpose. If it should be established, or should be conceded, that the rules of law would have defeated the enforcement of the rights of the plaintiff, in case Youngs had resisted and denied them, that question could not arise unless Youngs chose to avail himself of it. When he has admitted and acted upon the trust, and conveyed the property to its true and equitable owner, it cannot be tolerated that his creditors should question the title, or attempt to assert their lien upon what was really never his.

I have come to the following conclusions, upon the facts presented in this case. That upon the payment of the money for the plaintiff while she was an infant, and without her knowledge, the consequent conveyance to Youngs and his agreement to hold for her and convey to her, Youngs became a trustee for the plaintiff. That this trust being a creation of law, not resting on the parol agreement, but on all the facts and the payment of the money under this agreement, is not within the statute of frauds. That it is not a resulting trust such as is forbidden by section 51 of the statute of uses and trusts. That even if the trust could not have been enforced had Youngs denied its existence, yet he having not only confessed but executed it, the title thus made and supported by such equities is paramount to the general liens of

his judgment creditors, although antecedent in time to the conveyance in performance of the trust.

If this were a strict resulting trust it might be said that it could only extend to the proportion of purchase money actually paid by or for the plaintiff, and the mortgagee and the purchaser at the sale under the judgment against Youngs might be left to adjust their respective rights hereafter. In that event it would have been proper for the judgment in the present action to have terminated with declaring the holder of the legal title a trustee for the plaintiff, to the extent of the money advanced by her. But this was a trust founded indeed upon the advance of the money for the plaintiff, but assumed by positive agreement and defined and determined by that agreement; one which if expressed in the deeds according to its terms, would have vested the whole legal and equitable estate at once in the plaintiff. It was not therefore a trust resulting from the payment of purchase money only, and measured by that payment, but affected the entire estate. It was a trust to take the title to this parcel of land, to hold it for the plaintiff and finally convey it to her, and the mortgage which was subsequently made upon it was a part of the original scheme, in order to furnish the means to pay for the property. Youngs was constituted the agent and trustee to purchase, hold and convey, after raising upon the property by mortgage what was needed to make up the price. The claims of his creditors could not attach at all upon land which had been acquired and held under such a trust, after it should be properly established or executed. It is a trust which affects the whole property, and not one merely resulting *pro tanto* from the payment of a portion of the price. Such, I am convinced, is the aspect of the transaction, as between these parties, and it follows that the judgment directed by the referee was right and should be affirmed.

BROWN, J. concurred.

LOTT, J. dissented; holding that the lien of the judgment should be preferred to the plaintiff's equity.

Judgment affirmed.

[KINGS GENERAL TERM, February 14, 1859. *Lott, Emott* and *Brown,* Justices.]