[No. 3510.  Decided June 26, 1900.]

M. GOTTSTEIN *et al., Respondents,* v. KATHERINE WIST, *Defendant,* GEORGE WIST, *Appellant.*

PAROL   TRUSTS—WHAT   CONSTITUTES—RIGHTS   OF   CREDITOR   OF TRUSTEE.

Where a husband and wife conveyed away land, to which the children of the husband by a prior marriage asserted ownership of a half interest as community property inherited from their mother, a promise by the wife (their step-mother), who at the time was solvent, to hold certain other lands then in her name in trust for the children, in consideration of their making good the title attempted to be conveyed by the husband and wife to their grantee, constitutes an express trust, which confers on the *cestuis que trustent* equities superior to those of her subsequent creditors.

SAME—EXECUTED TRUSTS—ADMISSIBILITY OF PAROL EVIDENCE.

In an action by a creditor to set aside a conveyance made by a debtor, oral testimony is admissible to show that the land was held by the debtor as a trustee under an express parol trust, and that the conveyance had been made in execution of such trust.

Appeal from Superior Court, King County. — Hon. WILLIAM HICKMAN MOORE, Judge. Reversed.

*Ballinger, Ronald & Battle,* for appellant.

*Preston & Bell* and *Allen & Allen,* for respondents.

The opinion of the court was delivered by

WHITE, J.—This was an action brought by the respondents, as creditors of Katherine Wist, to set aside a deed made by her to George Wist, the appellant, conveying to him certain real estate, on the grounds that the same was made by Katherine Wist with intent to hinder, delay, and defraud the respondents, and was accepted by George Wist with knowledge of· such fraudulent intent. The undisputed facts in the case, as shown by the evidence, are as follows: Appellant George Wist and a sister and brother were children of Philip Wist and Mariana Wist. During the coverture of Philip and Mariana, and prior to the year 1876, Philip and Mariana acquired lot 2 in block 84, and lot 11 in block 81 of Central Addition to the city of Seattle, and lots 6, 7, and 8 in block 27 of the plan of North Seattle, as laid out by D. T. Denny and John Denny. In the month of July, 1876, Mariana Wist died intestate, and no administration was ever had upon her estate, and no claims were ever made against her estate, or the community composed of her and Philip Wist. In the month of December, 1876, Philip Wist and the defendant Katherine Wist intermarried. Subsequently Philip and Katherine sold to, and conveyed to, Martin Paup, by warranty deed, said lots 7 and 8, block 27. Some time in the year 1879 Philip and

Katherine Wist conveyed, by deed absolute, lot 2 in block 84, and lot 11 in block 81, said Central Addition, and lot 6, block 27, North Seattle, of the above described property, to a man named Kimball, to secure an existing indebtedness of several hundred dollars; and in the year 1884, the indebtedness having been paid, Kimball reconveyed the same property to Philip Wist. Between 1889 and 1892 Philip Wist, who was then engaged in business, became indebted to the respondents, upon which indebtedness the respondents afterwards recovered the judgments which they are endeavoring to collect in this case. On May 21, 1890, Philip Wist conveyed the said real property to the defendant Katherine Wist, to be her absolute property; and the title thereto stood of record in her name from that date until the 8th day of September, 1897, when she conveyed it to the appellant, George Wist, reciting in the deed a consideration of $2,500. At the time of the execution and delivery of said deed George Wist knew of the indebtedness to the respondents and knew that the respondents were pressing Katherine Wist for the payment of the same, and was apprehensive that they would attempt to seize the property in controversy for satisfaction of the claims. The respondents levied upon said property under their judgments against Katherine Wist. In 1894, the children of Mariana commenced an action against Philip and Katherine and Martin Paup to establish their interest in the property above described, under their mother, including the two lots sold to Paup. A settlement was made under which it was agreed that if the children would dismiss said suit, and deed to Paup their interest in the two lots previously deeded by Philip and Katherine to Paup, they (the children) should have in lieu thereof the property involved in this suit, being the balance of the community property of Philip and Mariana, and being less than a moiety

thereof in value; and, one of the children being then a minor, and the sister being about to marry, that said Katherine, who then held the legal title, would hold the same until said minor became of age, or until the conveyance should be required of her by said children. Accordingly the children dismissed their suit and executed conveyances to Paup, and Katherine agreed to execute a deed when and to whom the children should require the same to be executed. This agreement above recited was never reduced to writing, and no declaration of said trust was ever made in writing. In September, 1897, the minor children being then 21 years of age, Katherine, at the request of the children, deeded the property to George, who holds it for himself and brother and sister. At the time of the settlement between Philip and Katherine and the children, Philip was solvent, owing less than $300 over and above his indebtedness to these plaintiffs (respondents), who held notes signed by Philip and Katherine, secured by mortgage on real estate, the real estate being of little or no value. Besides, Philip and Katherine owned considerable other real estate, unincumbered. Philip died in 1895, and plaintiffs, having failed to present their claims to his administrator, brought actions at law on the notes, against Katherine alone. These actions were commenced more than a month subsequent to her deed to George. Judgments were recovered against Katherine on the notes. On these facts the court below found that as to one half of said lot 2, block 84, and as to one half of said lot 11, block 81, in said Central Addition, and as to one half of said lot 6, block 27, North Seattle, said Katherine Wist was the owner, and that the conveyance from Katherine Wist to George Wist, the appellant, as to said half interest, was fraudulent and void; and it was decreed that said one half interest be subjected to execution upon the judgments of

the respondents against Katherine Wist. To reverse this decree, this appeal is prosecuted by the appellant.

It may be conceded that in 1890, when Philip Wist conveyed lot 2 in block 84, and lot 11 in block 81, Central Addition, and lot 6, block 27, North Seattle, to Katherine Wist, he intended to, and did, vest in her, as her absolute estate and not in trust for any one, said property. If any trust as to such property was created, it was a direct trust, and was created in 1894, when a settlement was had of the suit brought by the appellant and other children of Philip and Mariana Wist against their father and Katherine Wist and Martin Paup. The agreement was then made to the effect that, if the children would make good Martin Paup's title by conveying their interest in lots 7 and 8, block 27, North Seattle, to Martin Paup, she (Katherine Wist) would convey to the respondents and the two other children, or to whom they might select, all of her interest in the property in controversy in this suit, so as to vest the full title to the same in said children. Under this agreement the children, by conveyance, made good Martin Paup's title, which Philip and Katherine Wist, in equity and good conscience, if not under the warranty in their deed to Paup, were required to make good. The deed of the children to Paup was a good, valuable, and sufficient consideration to have upheld the deed, if it had then been made by Katherine Wist to the appellant. The court below found:

Thirteenth finding: "That prior to the year 1894, the said Philip Wist and the defendant Katherine Wist made, executed and delivered to one Martin Paup their warranty deed to lots seven and eight in block twenty-seven of the plan of North Seattle, as laid out by D. T. and John Denny, and thereafter in the year 1894, the defendant George Wist and the said Laura Rippett and Charles O. Wist, being the children of the said Philip Wist and

Mariana Wist, his first wife, instituted a suit in the superior court of King county, state of Washington, for the purpose of having an undivided one-half interest in and to said lots seven and eight established and declared to be in them, as the heirs at law of the said Mariana Wist, deceased, the same being her community interest in said property."

Fourteenth finding: "That thereafter the said Philip Wist and Katherine Wist agreed with the defendant George Wist and the said Laura Rippett and Charles O. Wist, that in consideration of them, the said children, executing a conveyance in the said lots seven and eight in block twenty-seven, to the said Martin Paup, the said Katherine Wist should hold the title to lot two in block eighty-four and lot eleven in block eighty-one of Central Addition to the city of Seattle, and lot six in block twenty-seven of the plan of North Seattle, as laid out by D. T. Denny and John Denny, in trust for the benefit of said three children last mentioned."

Having made these findings, we are at a loss to understand how the court below came to the conclusion it did in this case, unless upon the theory that, because the agreement was not in writing, or was not made when Philip Wist, in 1890, conveyed to Katherine Wist, the children could not enjoy the benefits arising under the executed trust, inasmuch as parol trusts cannot be enforced, under the statute of frauds. This theory has been strenuously insisted upon by the respondents in their brief and in their oral argument before this court, and it becomes necessary to carefully weigh these objections. It must be remembered that this is not an action by the *cestuis que trustent* against the trustee to establish the trust. If there was a trust, it was an express trust, and it had been executed before the respondents instituted this action. This property, under the agreement found by the court, and above quoted, equitably belonged to these three children.

This court, in *Samuel v. Kittenger,* 6 Wash. 261 (33 Pac. 509), said:

" Only those transfers which are inhibited by law are void. And a conveyance of property in trust for those to whom it equitably belongs can in no event be void as to creditors for the reason that their equities cannot be paramount to those of the *cestui que trust.*

Correctly speaking, the agreement referred to did not constitute a resulting trust, but was the creation of an equity acting on the conscience of the parties to the agreement; and an express trust existed after said agreement was made, so long as the title was retained by Katherine Wist. Acting on the obligation expressly entered into between Katherine Wist and the children, Katherine Wist conveyed the property to George Wist, in trust for himself and brother and sister, some time before this suit was instituted. As between Katherine Wist and George Wist, it is clear that Katherine Wist could not set up that the trust was within the statute of frauds, and was void, because not in writing, for the purpose of annulling the deed to George Wist, because she had already executed the trust. *Robbins v. Robbins,* 89 N. Y. 251.

The respondents are the creditors of Katherine Wist. Can they be said to be in a better position than Katherine, as regards this property already conveyed to George Wist in the satisfaction of a just and legal obligation? It has been held that the trustee may execute a parol trust, if he chooses to do so, and that the court will protect him in so doing. *Karr v. Washburn,* 56 Wis. 303 (14 N. W. 189).

A creditor has the right to have the debtor's property applied to the payment of his debts, but not the property of another. In order to support the contention of the appellant, it is necessary by parol to prove the trust, if we may call the agreement such, which is a link in the chain

of the transaction leading to Katherine Wist's conveyance to the respondents.  Can this be done without contravening the statute of frauds?

The case of *Richmond v. Bloch,* 36 Ore. 590 (60 Pac. 385), decided by the supreme court of Oregon March 12, 1900, is a similar case to the one under consideration, and many of the authorities on this proposition are there collated.  That court says:

"The case is different, upon authority, from one where the trust is yet executory, and the attempt is to enforce it. The parol trust has now become an incident in the history of its consummation, while, as in the other event, it stands as an obligation of the trustee, not susceptible of legal establishment, and the question is whether the trust can be proved for the purpose of showing that the same has been executed.  This question has been explicitly answered in the affirmative in *Moore v. Cottingham,* 90 Ind. 239. That was a case where the husband had through mesne conveyances deeded certain lands to his wife, pursuant to a parol agreement that the title should be held by her in trust for him, in order to preserve the property and prevent him from squandering it.  In the execution of the trust, the wife, without joining with her husband, conveyed to their son, and he to the husband.  The husband afterwards conveyed to the appellants, who sued to enjoin the sale of an undivided interest in the land under an execution issued upon a judgment against one of the heirs of the wife; it being claimed that the wife's deed was void because her husband had not joined with her in its execution.  It was said in the course of the opinion that 'such trust, as before remarked, cannot be enforced, but, if it has been executed, the same will be upheld and sustained; and for this purpose proof of the facts will be allowed, though the trust rests in parol.'  The same question arose in a later case,—that of *Hays v. Reger,* 102 Ind. 524 (1 N. E. 386).  In that case William Reger conveyed by absolute deed, without consideration, to John Stump, upon a parol trust that the title should be held for the benefit of Reger.

Subsequently Stump and wife, by direction of Reger, conveyed to Reger's wife. While the legal title was in Stump, Hays and Wiles recovered a judgment against him, and they sought to have the proceeds of the premises applied to the satisfaction of their judgment. MITCHELL, C. J., speaking for the court, said: 'The question is not whether the parol trust may be enforced, but, the parties having voluntarily executed it, is it competent to aver and prove that it existed, in order to defeat the apparent lien of Hays and Wiles' judgment?   .   .   .   This statute [referring to the Indiana statute], as also the statute of frauds, was enacted, not that parties might avoid trusts which were executed, but rather to enable them, in case of an attempt to enforce such trusts while they remain executory, to insist on certain modes of proof in order to establish them. The trust having been executed, we need not determine whether it was one arising by implication of law, or whether it was an express trust. Whether it was one or the other, the parties having voluntarily executed it, the authorities are that it may be proved by parol for the purpose of showing that the apparent owner had no interest which was subject to the lien of a judgment against him.' .   .   .   In the case of *Sieman v. Austin,* 33 Barb. 9, the court said: 'A debtor will not be permitted to convey away his property, either real or personal, and relieve it from the incumbrances occasioned by his debts; but there is nothing to prevent his restoring to others their property, if it has been placed in his hands. Nor is there any reason why the property of others should be subjected to the payment of his debts, if he is honest enough to refuse to avail himself of an opportunity to use it for that purpose.' In further support of this doctrine, see *Borst v. Nalle,* 28 Grat. 423. It is manifest, under these authorities, that the defendant Adelaide Bloch could, as against the claim of the plaintiffs, lawfully convey the property in question, in so far and to the extent that she held the same in trust, to the *cestuis que trustent,* according to her verbal promise, if she chose to do so, and thereby discharge her moral obligation to them, and that, having executed the trust in accordance with the verbal undertaking, even

though executed subsequent to the time the claim of plaintiff accrued, the law will not only uphold the transaction upon her part, but will protect the *cestuis que trustent* in the enjoyment of the property thus conveyed to them."

In Perry on Trusts (4th ed.), § 76, the author says:

"A parol trust is not, however, an absolute nullity in any case, but rests in the election of the trustee in those cases where the *cestui* cannot enforce it. The courts will protect the trustee in the execution of the trust if he chooses so to do, and as far as possible will protect the beneficiaries in the enjoyment of the fruits of its execution."

"Resulting trusts are trusts that the courts presume to arise out of the transactions of parties, as if one man pays the purchase money for an estate, and the deed is taken in the name of another. Courts presume that a trust is intended for the person who pays the money." Perry, Trusts, § 26.

In this class of cases, on suits brought to establish and enforce them, the rule is that "the trust must result, if at all, at the instant the deed is taken and the legal title vests in the grantee. No oral agreement and no payments before or after title is taken will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction." The long list of authorities cited by respondents in their brief are on this proposition, and have no applicability to the case now under consideration. Trusts are divided into four classes: express trusts (sometimes called direct trusts), implied trusts, resulting trusts, and constructive trusts. Perry, Trusts (4th ed.), §§ 24-27.

The trust created by Katherine Wist with these children was an express or direct trust, created in 1894,—four years after Katherine Wist had acquired the property,—and it has been executed. In effect, the children then

purchased the property from Katherine Wist, gave to her a full consideration therefor; for Ronald, a witness for appellant, testifies that the property exchanged for this property was worth $2,500, and she agreed to convey this property to the children, held it in trust for that purpose for some time, and before this suit was instituted she carried out her agreement and executed her trust. A case similar in some respects to that at bar is *Davis v. Kennedy,* 105 Ill. 300, cited by appellant. The facts were these: A man, when solvent, gave and conveyed to his daughters some land, but no deed was recorded. Afterwards he sold the land and agreed with them that he would give them other lands. Subsequently, and after becoming insolvent, he deeded to his daughters the other lands promised. This conveyance was attacked by his creditors as fraudulent. The supreme court says:

"When, therefore, they [the daughters] consented to its [the first land] being sold by their father, and he to receive the consideration, and they to take money or other real estate in exchange, that formed a consideration for the conveyance of the   .   .   .   tract in controversy."

So in the case at bar. The conveyance by the children to Martin Paup, at the express request of Katherine Wist, of their interest in the lots conveyed to him by Katherine and Philip Wist, to discharge the obligation resting on Katherine and Philip Wist to make good the title of Martin Paup, under an agreement with Katherine Wist, if they would make good Paup's title, she would convey to them the property in controversy, formed a good consideration for the conveyance to George Wist as trustee for himself and brother and sister; and it should not be set aside at the instance of the creditors of Katherine Wist whose equities are not superior to the equities and rights of these children.

The final judgment and decree of the court below, entered in this cause on the 13th day of December, 1899, should be reversed and set aside, and this action dismissed with costs to the defendants in the court below and with costs to the appellant in this court, and it is so ordered and adjudged.

DUNBAR, C. J., and ANDERS, REAVIS and FULLERTON, JJ., concur.