[No. 13461. Department Two. April 12, 1917.]

*In the Matter of the Estate of* CHARLES E. MASON.

RAYMOND MASON, *Appellant*, v. LILLIAN B. MASON, *Administratrix etc., Respondent.*[1]

FRAUDS, STATUTE OF—ORAL AGREEMENT FOR LAND—TRUSTS. An oral promise to convey land to another upon payment of the purchase price is not enforcible as an express trust because not in writing; nor as a resulting trust where there was no part payment by the *cestui que trust* or other equitable circumstances and the transaction was simply optional.

HUSBAND AND WIFE—COMMUNITY PROPERTY—PAYMENT AFTER MARRIAGE. Where the husband took title to land after marriage under a preexisting oral promise or option, and the same was paid for by the community, it is community property.

SAME—COMMUNITY PROPERTY—RIGHTS OF HEIRS — EXPENSES FOR SUPPORT. Expenses incurred in supporting the family cannot be charged against the interest of a son in his deceased's mother's half of the community property even to the extent of his own support, where the burden of such support was voluntarily assumed by the surviving husband.

SAME—COMMUNITY PROPERTY—RIGHTS OF HEIRS — IMPROVEMENTS. The interest of a son in his mother's half of the community land cannot be charged with improvements placed thereon by the surviving husband, either at common law, or under the betterment statute,

[1]Reported in 164 Pac. 205.

Rem. Code, § 797, allowing recovery for improvements made by one "holding in good faith under color or claim of title adversely to the claim of the owner."

EXECUTORS AND ADMINISTRATORS—CLAIMS — LIMITATIONS — ISSUANCE OF LETTERS. Under Rem. Code, § 1368, providing that no real estate of a deceased person shall be liable for his debts, unless letters be granted within six years from the date of the death, the claim for advances made by a second wife to liquidate debts owing at the time of the first wife's death cannot be asserted against the deceased wife's community interest, twenty years after the death of the first wife, no letters having been issued upon her estate.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered August 26, 1915, upon findings in favor of the defendant, in an action to try title to real property, tried on the merits to the court. Reversed.

*Miller & Wilkinson*, for appellant.

*G. M. Davison* and *Henry Crass*, for respondent.

FULLERTON, J.—On April 1, 1914, Charles E. Mason died intestate, being then seized of eighty acres of land, situated in Clarke county. The respondent, his then wife, was afterwards appointed administratrix of his estate. In the course of the administration, it was thought necessary to sell all, or some portion, of the real estate mentioned, and to that end the administratrix filed the usual petition applicable in such cases for such a sale. In the petition, she did not set forth the nature of the title by which Mason held the property at the time of his death, but evidently proceeded on the assumption that it was either Mason's separate property or property of the community composed of herself and Mason.

In answer to the notice to show cause, the appellant, Raymond Mason, appeared and filed written objections to the proposed sale. He set forth, in effect, that Mason had been married prior to his marriage with the respondent; that he was the sole issue of such marriage; that the land in question was acquired during the coverture of Mason

and his mother and was their community property; that his mother died while the coverture existed, and that he, as her sole heir, became vested on her death with an undivided one-half interest in the property. He further averred that, if the land or any part thereof should be sold, he would lose his interest in the same, and prayed that the sale be postponed until his rights in the property could be determined.

In reply to the objections, the respondent, after certain admissions and denials, set up three affirmative defenses. In the first she averred that the property in question was acquired by Mason prior to his marriage with the appellant's mother and was at all times his separate property.

For a second defense, she set up that the community composed of Mason and the appellant's mother was, at the time of the mother's death, indebted in the sum of approximately $1,000, and that, of the indebtedness existing at the time of her death, some $180 was for obligations incurred in liquidating such indebtedness, and that the remainder was largely incurred in purchasing provisions, supplies, and household necessities which went to the support of the family of which the appellant was a member.

For a third defense, she set forth that her mother had, during the time of the respondent's marriage with Mason, loaned and advanced to the use of the community composed of herself and Mason sums of money aggregating $700, which had never been returned to the mother, and that the mother had assigned all of her right to the indebtedness represented thereby to the respondent. She further averred that the principal part of the improvements now on the premises had been put thereon subsequent to her marriage with Mason; that at the time of such marriage only about ten acres of the land had been cleared and made tillable, while at the time of his death the cleared area had been increased to thirty acres, of which four acres had been planted to fruit trees and was then a producing orchard; that at the time of her marriage the land was worth not to exceed

$2,000. Elsewhere it appeared that the land was valued by the appraisers of Mason's estate at $4,000. The prayer of the reply was that the court determine the several interests of the parties to the estate; that the respondent be given credit for the money advanced by her mother; and that the interest of the appellant, whatever the court should find it to be, be charged with its proportionate share of the debts of the estate. There was a prayer also for general equitable relief.

The trial court treated the proceeding as one to try title to the property, heard the evidence of the parties, and adjudged from the proofs that the property was the separate property of Charles E. Mason, and granted the petition to the extent of permitting a sale of twenty acres of the land.

The evidence disclosed the following facts: The land was formerly a part of a 160-acre tract which stood in the name of one Charles E. Whitney. On December 7, 1878, Whitney entered into a contract with Levi A. Mason by which he agreed to sell to Mason the entire tract for a consideration of $600, a part to be paid on the execution of the contract and the remainder within a named period thereafter. Mason paid the balance on November 27, 1880, and on that date received a warranty deed from Whitney conveying the title to him. At the time the contract was entered into, Levi A. Mason orally promised his brother Charles to deed to him (Charles) 80 acres of the land, on the payment of one-half of the purchase price of the entire tract. At the time of the promise, Charles was a single man, and for a part of the time lived on the common premises with Levi and the members of his family. During this time, he did a little work in the tract he was to receive in the way of slashing, and started the erection of a small log cabin thereon. He, however, paid no part of the purchase price prior to his marriage with the appellant's mother in August, 1881; his earnings prior to that time going, as his brother testified, to the payment of an obligation he had incurred in the state of his former home

before he came to the territory of Washington. The father and mother of the appellant first took up their residence on the land some time in 1882, the year following their marriage. Between that time and the time the husband received a deed to the property, on November 14, 1887, they paid the purchase price in small payments, both contributing thereto from their joint and individual earnings, the final payment being made some two months before the deed was executed. All of the substantial improvements, also, were placed on the premises subsequent to the marriage, the principal part of them subsequent to the entry thereon in 1882.

The trial court held that Levi A. Mason took the property as trustee for Charles E. Mason, and that the property was at all times thereafter the separate property of the latter; that the appellant had no interest therein other than as an heir of Charles E. Mason; that the whole of the property was subject to the debts of Charles E. Mason existing at the time of his death, and to the payment of the costs and expenses of administering his estate. An order was entered directing that the administratrix sell in the manner prescribed a specifically described twenty acres of the tract for the purpose of paying such debts and expenses. From this order, this appeal is prosecuted.

It is our opinion that the conclusion of the court is not justified by the facts. It may be doubted, we think, whether the oral promise of the brother Levi to convey the property to Charles on the payment of the purchase price created any interest in the land in favor of Charles which was enforceable, either in law or equity. There was no enforceable express trust since the agreement was not in writing. *Gottstein v. Wist*, 22 Wash. 581, 61 Pac. 715; *Spaulding v. Collins*, 51 Wash. 488, 99 Pac. 306; *Pilcher v. Lotzgesell*, 57 Wash. 471, 107 Pac. 340; *Kinney v. McCall*, 57 Wash. 545, 107 Pac. 385; and no resulting trust, since there was no payment or part payment of the purchase price by the *cestui que trust*, nor other equitable circumstance bringing the transaction

within the rule. Nor was the contract in any sense a mortgage; that is, it was not an advance or loan of money from Levi to Charles in which the title to the land was taken as security for the repayment of the money. Charles assumed with reference to the transaction no obligation whatsoever. His part of the transaction was purely optional, and if any obligation at all arose on either of the parties to the transaction it arose after the completion of the payments of the purchase price. But these payments were not made by Charles. They were made by the community composed of Charles and his then wife, and clearly the land became on the execution of the deed the community property of Charles and his then wife.

The case of *Borrow v. Borrow*, 34 Wash. 684, 76 Pac. 305, principally relied upon by the respondent, is not contrary to this principle. That was a case of a loan of money with the title taken in the name of the person making the loan as security for its repayment; the lender, as we held, occupying the dual position of mortgagee and trustee of a resulting trust. Moreover, it was a controversy between the lender and the borrowers, not a controversy between the legal representatives of the borrowers as to the nature of the title taken by them. We cannot think it in any way bears upon a controversy like the one before us.

Our conclusion is that the property in controversy was the community property of Charles E. Mason and the mother of the appellant, and that the appellant, on the death of his mother, became entitled to an undivided half interest in the property, subject to the community debts then existing.

The foregoing conclusion renders it necessary to notice the other questions presented. The interests of the appellant cannot be charged with the expenses incurred in the support of the family of the surviving member of the community incurred subsequent to the dissolution of the community, even to the extent that such expenses were increased by the appellant's membership in the family. The burden of supporting him was voluntarily assumed by the surviving

member, and his representatives cannot now charge back this cost thereby incurred to the appellant's property. Nor is the appellant liable for the improvements that have been placed upon his property. The liability, where it exists at all, is purely one of statutory creation, no such liability existing under the common law. Our statute (Rem. Code, § 797) is not sufficiently broad to create it in this character of case. Under our statute, the improvements must have been made by one "holding in good faith under color or claim of title adversely to the claim of" the owner. These conditions do not exist in the case before us. As to the claim for the money advanced by the respondent's mother, in so far as it was used to liquidate the debts owing at the time of the appellant's mother's death, it could have been properly charged against his estate had the claim been made within the period of the statute of limitations. But the mother's death occurred in 1893, more than twenty years prior to the assertion of the claim. The statute (Rem. Code, § 1368) provides that no real estate of a deceased person shall be liable for his debts unless letters testamentary or of administration be granted within six years from the date of the death of such decedent. The statute is a statute of limitations, and fixes a time when the real property of which a person dies seized cannot be charged with his debts. It is applicable here, and since the limitation fixed has long since expired, the court has no power to charge the appellant's property with the obligations existing at the time of the death of his mother.

The order is reversed, with instructions to stay the proceedings until such time as the property is partitioned between the appellant and the owners of the interest with which Charles E. Mason died seized.

Mount, Holcomb, and Parker, JJ., concur.