MARSHALL ROBBINS, Respondent, v. LOUIS S. ROBBINS, Appellant.

Defendant purchased and paid for certain lands which he caused to be deeded to F., upon an oral understanding that the latter would hold them subject to his order. F., thereafter, at the request of defendant, pursuant to such understanding, and without other consideration, conveyed the lands to defendant's son, the plaintiff, who agreed orally to hold the title for the use and benefit of defendant and subject to his order. Defendant went into possession at the time of the original purchase, managed the lands and received the rents and profits. Plaintiff, at the request of the defendant, conveyed the lands, receiving for a portion of the purchase-money, two bonds and mortgages; one bond and accompanying mortgage defendant sold for his own benefit, and at his request plaintiff assigned them, not questioning his father's title. The other bond and mortgage was, with plaintiff's knowledge, delivered to defendant, and upon the refusal of the latter to deliver them up on demand plaintiff brought this action in equity to have it adjudged that he was owner of them and entitled to the possession. *Held*, that the provision of the statute of uses and trusts (1 R. S. 728, § 51) declaring that where a grant is made to one person, the consideration being paid by another, no use or trust shall result in favor of the latter, but title shall vest in the former, had no application; that, conceding the trust to be invalid, it having been executed by plaintiff, the right to the purchase-money vested at once in the defendant; that plaintiff, by operation of law, took the bond and mortgage as trustee for defendant, and those securities being personal property the statute had no application.

*It seems* that if said statute, or the provision of the statute of frauds prohibiting the creation of trusts in lands, save by a writing (2 R. S. 134, § 6), applied, plaintiff had no such right to the securities as a court of equity would enforce.

*Robbins* v. *Robbins* (15 J. & S. 193), reversed.

(Argued April 24, 1882 ; decided May 30, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made February 7, 1881, which affirmed a judgment, in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 15 J. & S. 193.)

This action was brought to have it adjudged that plaintiff is

the owner and entitled to the possession of a certain bond and mortgage in the possession of defendant.

The material facts are stated in the opinion.

*Walter Edwards, Jr.,* for appellant. The subject of the controversy in this action is personal property and is in no way affected by, or within the purview of the statute relating to uses and trusts. (*Kane* v. *Gott,* 24 Wend. 641; *Savage* v. *Burnham,* 17 N. Y. 561; *Brown* v. *Harris,* 25 Barb. 134.) The verbal promise and the conveyance made to plaintiff in reliance thereon imposed a high moral obligation, which he was at liberty to recognize and he was bound to fulfill the duty imposed by such obligation. (*Ocean National Bank* v. *Hodges,* 9 Hun, 161–165; *Davis* v. *Graves,* 29 Barb. 480, 485; *Simeon* v. *Schurck,* 29 N. Y. 598, 612, 613; *Foote* v. *Bryant,* 47 id. 544, 549.) The facts of this case as found by the court, including the plaintiff's conduct and declarations, show that he held the bond in controversy in trust for the defendant who is entitled to all beneficial interest therein. (*Day* v. *Roth,* 18 N. Y. 448, 453; *Tracy* v. *Tracy,* 3 Bradf. 57; *Ocean Bank* v. *Hodges,* 9 Hun, 161–165; *Davis* v. *Graves,* 29 Barb. 480–85; *Simeon* v. *Schurck,* 29 N. Y. 612–13; *Foote* v. *Bryant,* 47 id. 549.) Even while the title to the real estate was in Marshall Robbins it was unaffected by the statute of uses and trusts. (1 Edm. Stat., 677, § 51; 1 Bl. Comm. 297; 1 Parsons on Contracts [6th. ed.], 431; 22 Wend. 395; *Rathbun* v. *Acker,* 18 Barb. 393; *Chase* v. *N. Y. Central R. R.,* 26 N. Y. 523, 525; *Donaldson* v. *Wood,* 22 Wend. 395–397; *Ryan* v. *Dox,* 34 N. Y. 307; 45 id. 596; 52 id. 260; *Simeon* v. *Schurck,* 29 id. 598; *Foote* v. *Bryant,* 47 id. 544; *Foote* v. *Foote,* 58 Barb. 258; Willard's Equity [Potter's ed.], 599; Hill. on Trustees, 144; *Ryan* v. *Dox,* 34 N. Y. 307; *Carr* v. *Carr,* 52 id. 251–60.)

*Luther R. Marsh* for respondent. The statute executes this title in the grantee, the plaintiff. No use or trust results in favor of the defendant who paid the consideration. (1 R. S. 747, § 51; *Garfield* v. *Hatmaker,* 15 N. Y. 475; *Hurst* v.

*Harper*, 14 Hun, 280 ; R. S. 135, § 6 ; Sess. Laws 1860, chap. 322 ; *Cook* v. *Barr*, 44 N. Y. 156–160 ; *Leman* v. *Whiteley*, 4 Russ. [Eng. Ch.] 423 ; *Steere* v. *Steere*, 5 Johns. Ch. 1.) The presumption of law and equity is that under the circumstances the transaction was an advance from father to son. (Perry on Trusts [2d ed.], 143, 144 ; Story on Equity [11th ed.], 496–498 ; *Davis* v. *Shield*, 26 Wend. 341, 350, 351.)

DANFORTH, J. The plaintiff's application is to the equitable jurisdiction of the court ; but a case suggesting fewer considerations likely to influence a court of equity in its favor, or more opposed to the rules and maxims by which such a tribunal must be guided than the one on which he relies, has not been brought to our attention. In the diversity of causes of action it seldom happens that one is found which has no other support than an admitted breach of confidence, and violation of trust reposed by a father in his son. Such is this case.

In September, 1869, the defendant, for $100,000, purchased lands in Rye, Westchester county, and satisfied the price thereof. He, for reasons which do not appear, directed the deed therefor to be made out to one Fay, who was then in his employment, and who accepted the conveyance at his request, upon an oral understanding that he would hold the premises subject to the order, and for the convenience of the defendant. On the 9th of December, 1871, at the request of the defendant, and in execution of the trust and confidence so reposed in him, and upon no other consideration Fay conveyed the premises to the plaintiff, who is the son of the defendant. The plaintiff gave no consideration whatever either to Fay or the defendant for such conveyance, or the premises described therein. At this time the defendant was in the habit of reposing great confidence in the plaintiff, and making or procuring to be made to him conveyances of land belonging to or purchased by the defendant, in the trust and confidence that the plaintiff would dispose of such land and premises for the use and benefit of defendant, and as he might direct and request, and at the time of the conveyance from Fay, the plaintiff expressly agreed with

the defendant, although not in writing, to hold the title to the premises described therein for his use, benefit and convenience, and subject to his order. The defendant, at the time of his purchase went into the actual possession of the premises, and notwithstanding the conveyance to Fay, and that from Fay to the plaintiff, continued in the possession thereof by himself or his tenants, and received at all times the proceeds and rent of the land, and solely and without direction from the plaintiff managed the property. In October, 1872, at the request and for the benefit and convenience of defendant, the plaintiff conveyed the premises to Frederick J. Ferris and John Shillito, Jr., for the consideration expressed in the conveyance of $100,-000. To secure payment of part of this purchase-money, they executed to the plaintiff two bonds and mortgages upon the premises, one for $45,000, the other for $15,000. The $15,000 bond and mortgage was subsequently in July, 1873, sold by the defendant for his own benefit, and by his direction the plaintiff executed to the purchaser an assignment thereof. The defendant then claimed to be the owner of the property, and giving a reason (which involved no immoral or illegal purpose) why he had the title in his son's name, and the latter, although present, neither "contradicted, denied, or questioned it." The other bond and mortgage, which is the one now in question, were a few days after execution, with the knowledge and consent of the plaintiff, delivered to the defendant, and have since remained in his custody. These facts are found by the trial court. In November, 1879, the plaintiff demanded of his father the bond, and being denied, commenced this action in February, 1880, for the purpose of having it adjudged " that he is the sole owner and holder of the bond and mortgage," and entitled to the immediate possession thereof from the defendant. Thus the facts, which were not in writing, have in a litigation moved by the plaintiff been found to exist, and upon them the court is to say " whether the plaintiff hath title in conscience to recover or not."

In the first place it is obvious that a clear and absolute trust in the plaintiff, in favor of the defendant, was established in

regard to the premises conveyed to the former by Fay, which a court of equity would recognize and enforce (*McCartney* v. *Bostwick,* 32 N. Y. 53) unless prevented by the statute (§§ 51, 56, *infra*). But here we are to consider that the defendant is not in court of his own motion. He is brought in by the plaintiff, who is compelled to come here and ask for the relief which he cannot obtain elsewhere. He concedes the defendant's case, but to defeat it relies upon the statute (1 R. S., § 51, title 2, part 2, chap. 1, art. 2, p. 728), which declares that "where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance," subject to an exception, in favor of creditors, of no importance here. The existence of a state of facts embraced in this provision, and but for which the defendant would have a clear case, is assumed by the learned counsel for the respondent, and the claim made, that under these circumstances the defendant cannot make out a trust, "except by a writing declaring the trust, and subscribed by the plaintiff," relying in support of this proposition upon section 6 (2 R. S., title 1, part 2, chap. 7, p. 134), which prescribes these formalities in the creation of certain interests in lands.

It may, however, be observed at the outset that it is also provided by the same statute (§ 10), that the provisions of that title "shall not be construed to abridge the powers of courts of equity to compel the specific performance of agreements, in cases of part performance of such agreements," and that it is a well-settled doctrine, that in cases of fraud equity will relieve, even against the words of a statute. The question then is, whether the plaintiff has such a right to the bond and mortgage in controversy as a court of equity will enforce; or to bring the question into a narrower compass, whether provisions of law, intended to prevent fraud, can be successfully invoked to secure to a wrong-doer the fruits of his iniquity.

The answer is easy. In *Reech* v. *Kennegal* (1 Ves. Sr. 123),

the lord chancellor says: "The court has always adhered to this principle, that the statute should never be understood to protect fraud, and therefore, whenever a case is infected with fraud, the court will not suffer the statute to protect it so that any one should run away with a benefit not intended." A few instances of the application of this doctrine will make much discussion quite unnecessary. *Nelson* v. *Worrall* (20 Iowa, 469), brought before the court a verbal transaction between father and son, the heirs of the father suing the heirs of the son to recover the undivided half of certain real estate. It was purchased from the government and entered by the son in his own name, the father furnishing one-half of the purchase-money, the title to one-half to be held by the son in trust for the father. Both parties went into possession. The trust was denied. The court held it was not within the statute, and upon these facts the agreement might be enforced in equity, and especially so "if the father entered into possession in accordance therewith, and held the land thereunder until his death," saying, "such agreements have been frequently enforced in this State;" but dismissed the bill for want of sufficient evidence.

In *Haigh* v. *Kaye* (L. R., 7 Ch. App. Cas. 469), a very recent case, it appeared that the plaintiff had conveyed to the defendant, by absolute deed expressing a consideration, certain premises, but in fact, as he alleged, "in trust for him," and to be reconveyed upon demand. The defendant reposed upon the letter of the deed, and refused to convey. Being sued, he relied upon the statute of frauds and claimed the estate as his own, discharged from any trust. The master of the rolls directed a reconveyance, and upon appeal the same statute was set up and the allegation made that the conveyance was in view of an adverse decision in a case pending between the plaintiff and some other party. The court in strong language expresses its opinion of the defense, saying: "If a defendant means to say that he claims to hold property given to him for an immoral purpose, in violation of all honor and honesty, he must say so in plain terms and must clearly put forward his own scoundrel-

ism, if he means to reap the benefit of it;" and referring to the claim that under the statute any declaration of trust or confidence must be shown in writing, says : " The statute of frauds was never intended to prevent a court of equity from giving relief in a case of plain, clear and deliberate fraud."

The same principle has been frequently acted upon by this court (*Ryan* v. *Dox*, 34 N. Y. 307; *Wheeler* v. *Reynolds*, 66 id. 227) in both of which cases a full and careful examination was made of the reasons and authorities on which it rests. Indeed the decisions are all one way. They establish as a fundamental doctrine of a court of equity that the statute of frauds was not made to cover fraud. In the cases especially referred to, the wrong-doer was forced into court. In this case he comes in voluntarily, asking the court to aid him in the perpetration of his fraud, and without even the poor excuse found in other cases, that by the conveyance to him, the defendant meditated a fraud on others. In the next place, the plaintiff is not entitled to have the statute (§ 51, *ante*) strained in his favor, and taken literally it does not cover his case. The grant to him was from Fay, and for that no valuable consideration was paid; Fay conveyed because in common honesty, and in fulfillment of his trust, he was bound to convey. The plaintiff's claim is *stricti juris*. The statute (§ 51) now invoked by the plaintiff, if operative in such a case and according to the plaintiff's claim, was effectual as between Fay and the defendant, and vested in Fay the title so completely that the defendant had no legal or equitable interest in the land. (*Garfield* v. *Hatmaker*, 15 N. Y. 475.) Fay had a right, however, to recognize his moral obligation and convey it to such person as defendant chose (*Siemon* v. *Schurck*, 29 N. Y. 598; *Foote* v. *Bryant*, 47 id. 544), and upon such conditions as he thought fit to impose or prescribe. It was the plaintiff's promise to perform those conditions, which led to the execution of the deed to him.

But another and conclusive answer to the plaintiff's case is, that as by his express agreement he was to hold the title to the land conveyed " for the use, benefit and convenience, and sub-

ject to the order of the defendant," he did in consummation of the sale to Ferris and Shillito, by direction of the defendant, and for his benefit and convenience, execute a deed to them. At the same time possession went to them from the defendant. The trust was executed, and whether the defendant could have compelled it or not is immaterial. The plaintiff responded to the call of his *cestui que trust*, and from that moment had no further concern, or interest, real or apparent, in the property. His whole duty as trustee was discharged. Nothing then remained but a right to the purchase-money, and this vested at once in the defendant. Although the bond and mortgage, in form, ran to the plaintiff, he took as trustee for the defendant, by implication of law, if not by agreement. Those securities were personal property only and had no relation to the statute.

It is not necessary to inquire whether the defendant could, by any legal proceeding, have compelled the plaintiff to convey the lands; he has done so in performance of his undertaking, and without compulsion. Nor is it necessary to inquire whether if he had received the consideration of the deed in money it could have been taken from him. He did not receive it, and is now in a court of equity seeking to obtain it. Notwithstanding the ingenious and persuasive argument of the learned counsel for the respondent, we have found no ground upon which the claim can stand.

The judgment of the General and Special Terms should be reversed, and the defendant have judgment dismissing the complaint, and adjudging that the bond and mortgage described therein are the property of the defendant, and that the plaintiff pay to him his costs of this action.

All concur.

Judgment accordingly.