## In re UPSON.

### (District Court, N. D. New York. June 27, 1903.)

1. BANKRUPTCY—VALIDITY OF TRUST IN FAVOR OF DAUGHTER.

A father advanced a sum of money for the purchase of a lot and the building thereon of a home for his daughter and her husband, under an agreement that the husband, who took title to the lot in his own name, should convey the same to his wife. Such conveyance was not made, however, during the lifetime of the wife, who died leaving an infant daughter. It was then agreed between the grandfather and father of the child that the father should sell the property, and from the proceeds reserve the amount of the advancement, and hold the same in trust for the child, to be paid to her, with interest, when she reached the age of 21, and this agreement was carried out, the father receiving the money and executing his note therefor, with interest payable to himself as guardian for his daughter, which note he held. There were no creditors whose interests were affected, and the trust was at all times recognized by the father, and by the grandfather in making his will, by which he treated his granddaughter as having received the advancement made to her mother, and made a further bequest for her benefit to her father as trustee. *Held*, that a valid trust was created in favor of the daughter, although her father was not her legal guardian, and that on his bankruptcy she was entitled to share with other creditors in his estate.

In Bankruptcy. On appeal from the decision of C. L. Stone, referee, allowing the claim of Edith E. Upson.

A. J. McMahon, for the trustees.
W. H. Failing, for First National Bank of Baldwinsville.
G. W. O'Brien, for State Bank of Baldwinsville.
J. R. Shea, for Edith E. Upson.

RAY, District Judge. Edith E. Upson, the daughter of the bankrupt, presents a claim for $1,770, and interest for 20 years, 6 months, and 13 days against the bankrupt estate, and which sum is alleged to have been held by the bankrupt in trust for the claimant, to be paid over to her when she became 21 years of age. The claimant became 21 years of age on the 12th day of April, 1902.

The facts found by the learned referee are as follows: James W. Upson married the daughter of one Hiram Bowman. Some time thereafter Mr. Bowman, not pleased with the way the bankrupt and his wife were living, made an agreement with Mr. Upson that if he and his wife should find a suitable lot, and erect a house upon it for their occupancy, he would pay one-half of the cost, regarding it as an advancement to his daughter, Mrs. Upson, upon her prospective inheritance from him. The lot was selected, and a deed taken by Mr. Upson in his own name, but it was agreed then or subsequently, and in consideration of the advancement of the money hereafter mentioned, that the premises should be deeded over to Mrs. Upson. Upson paid the actual consideration for the lot, but Mr. Bowman shortly thereafter refunded that amount to him, and paid to Upson for the purchase of the lot and erection of a residence thereon, under and pursuant to this agreement, the sum of $1,770. Upson did not carry out his agreement and deed the premises to his wife during her lifetime, but Mr. Upson did not deny at any time either the agreement or the

equitable interest of Mrs. Upson therein. Mrs. Upson died in April, 1881, a few days subsequent to the birth of the claimant, Edith E. Upson. After her death it was agreed between Mr. Bowman and Mr. Upson that Mr. Bowman should take the child, this claimant, to live in his family; that the house and lot should be sold, and the $1,770 which Bowman had put into the same under the aforesaid agreement should be reserved and held in the hands of Mr. Upson, and set aside for the child, so that the fund which he had originally intended to give to his daughter should go to this only child, with accrued interest, when the child should become 21 years of age. On this agreement being made, Mr. Bowman assented to the sale of the house and lot, and it was sold accordingly. After the house and lot were sold, Mr. Upson loaned the $1,770 to Upson & Donovan, a firm of which Mr. Upson was a member, and the firm gave its note to Mr. Upson, as guardian for this claimant, she being a small child at that time. Donovan died, and Upson succeeded to the business, in 1887. Upson, as surviving partner, settled the business, and in making the settlement computed the amount owing by the firm to this infant, and held by Upson in trust for the infant, the indebtedness or claim being represented by the note; and Mr. Upson then gave a note for the amount, $2,325.80, dated July 25, 1887, payable to the order of himself, as guardian for Edith E. Upson, with interest. Mr. Upson kept the note in his safe, and no part of it has been paid. It is evident that Mr. Upson at all times not only recognized the ownership of the daughter in this fund, but disclaimed any ownership thereof in himself, and acknowledged in many forms that he held this money in trust for the daughter. The infant could not act for itself, but was represented not only by the father, but by the grandfather, Mr. Bowman. At this time, and during all of these transactions, the rights of creditors were not interfered with or prejudiced. About May 29, 1882, Mr. Bowman made his last will and testament, which was probated October 19, 1882. Before making this will Mr. Bowman had a talk with Mr. Upson concerning this fund which Mr. Upson had agreed to hold and held for his daughter, and it was agreed that by making a bequest of $1,000 to the granddaughter, this claimant, the bequest, together with the fund, would yield to her about the sum he would have given to his daughter, Mrs. Upson, had she lived. The will was drawn accordingly, and gave to the granddaughter $1,000, to be placed in the hands of her father, James W. Upson, and by him securely invested, the principal and interest to be paid to the granddaughter on her arriving at the age of 21 years. It thus appears that by the will and the prior arrangement, resting in part in writing and in part in oral agreement, there was actually set apart from the estate of the grandfather the $1,770 and the $1,000 for the benefit of this granddaughter, all in the hands of and to be held by the father, James W. Upson, and paid over when this claimant should reach the age of 21 years. These facts are not only found by the referee, but are sustained by the evidence, and this court does not feel inclined to interfere with the findings.

It is claimed by the contesting creditors of James W. Upson that, the $1,770 having been put into this real estate and the deed taken in

the name of James W. Upson, the title, legal and equitable, vested in Upson, and that neither his wife nor his daughter nor Mr. Bowman could have maintained an action to recover the money or the real estate, or any part of it. However this may be, Mr. Upson recognized the agreement he had made with his wife and Mr. Bowman that the wife had an interest in the real estate to the extent mentioned, and also recognized his agreement to deed to her, and, on the death of the wife, Mr. Upson and Mr. Bowman, acting in the interest of this infant, mutually agreed upon a sale of the premises and the setting aside of $1,770 for the benefit of the child. The money was set apart accordingly, and held by Mr. Upson for her benefit, under the agreement to pay it over to her on her arrival at the age of 21 years. Here is not only a plain declaration of a trust, but the creation of a trust fund, and the recognition of the agreement by repeated declarations and statements, and a written acknowledgment, in the form of the note, that the money is held for the child. The failure of Upson to deed to the wife, pursuant to the agreement, in her lifetime, certainly affords a sufficient consideration, when coupled with the other facts, for the setting aside of this fund for the benefit of the child. The further recognition of the agreement and arrangement by Upson at the time Mr. Bowman made his will is not only a recognition of, but a further declaration of, the existence of the trust.

There is no pretense that any of these transactions or arrangements were in fraud of creditors. It is perfectly evident that the estate of the bankrupt in the hands of the trustee was increased by the addition thereto of this sum and interest, and that this child is entitled to share with the other creditors in the distribution of said estate. It is well settled that, although a writing is requisite to prove a declaration of trust in land, yet if the person who holds land under an oral agreement sells the land, and then makes an oral declaration of the trust, and subsequently uses the proceeds to buy other land, the oral declaration will impress the trust upon the proceeds, and enable the beneficiaries to trace the same into the land last purchased and fasten the trust upon that. Tracy v. Tracy, 3 Bradf. Sur. 57; Bork v. Martin, 132 N. Y. 280, 30 N. E. 584, 28 Am. St. Rep. 570; Robbins v. Robbins, 89 N. Y. 251; Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067; Chaplin on Trusts and Powers, p. 33. It is evident that if the land be sold and the funds set apart, by the one who held the legal title, as a trust fund for the benefit of the beneficiary, and he acknowledges that he has done so, this is a sufficient declaration of trust, and the fund may be held as a trust fund.

This is not a case where the trustee, Upson, transferred his own money or property from one pocket to another, attempting thereby to create a trust. On the other hand, it is a case where he sells the land which he had agreed to deed to his wife, and then holds the money for the benefit of a third person, the child of that wife, pursuant to an agreement, made with the grandfather, to furnish the money for the purchase of the land and the erection of buildings thereon, in the first instance. It is the recognition by Upson of a moral obligation, to say the least. Under the circumstances it was not necessary that the note be delivered to any person for the infant, except as it was de-

livered to Upson himself, the natural guardian of the infant, who held it in his safe for the infant. Govin et al. v. De Miranda, 140 N. Y. 474, 35 N. E. 626. Even if it could be said that Upson perpetrated a fraud within the case of Goldsmith v. Goldsmith, supra, by failing to deed to the wife, that wrong was fully righted when, pursuant to the agreement with her father after her death, he agreed to sell and did sell the premises, and set aside the proceeds for the benefit of the child. The grandfather consented to the note, acting for the child, as appears by the evidence, and it makes no difference that the money was actually held by Upson and represented by the note. In fact, one of the essential elements of such a trust and trust relation as this is that the trustee holds the property. In the nature of things, there can be no delivery of the property itself. Locke v. F. L. & T. Co., 140 N. Y. 135, 35 N. E. 578; Chaplin on Trusts and Powers, p. 38. Not only did Upson declare this trust to the grandfather and to others, but with the consent and knowledge of the grandfather, who acted for the child, he made and held the note for the benefit of the child, and the grandfather by his will made Upson trustee. Nor is it material that Upson was not in fact the general guardian of the person and estate of this infant. He was the natural guardian, and assumed to act as guardian, and took and held the note as such for the benefit of the child. Within Govin v. De Miranda, 140 N. Y. 474, 35 N. E. 626, this was all sufficient. See, also, Chaplin on Trusts and Powers, pp. 38–39, § 80.

It is insisted by the contesting creditors that the holding of this fund in this manner by Mr. Upson was in violation of law; that is, that he had no right to take and hold a trust fund in this form for the benefit of his child, giving his own note therefor. In other words, it is asserted that he had no legal right to loan this money, held in trust, to himself. However this may be, Mr. Upson recognized the trust and had the money, and, as evidence that he had the money and owed it to the daughter, he gave to himself, as her guardian, a note for the amount. The child cannot be deprived of its rights or interest in this money by such acts on the part of the father, even if conceded to be illegal or unwarranted. It may not have been the best way in which to declare the trust and create written evidences of its existence, but it was the way pursued by the parties, and it is all-sufficient, inasmuch as these acts, with other facts proved and admitted, demonstrate that there was a trust fund, a declaration of trust, and that the fund was held by the bankrupt, James W. Upson.

It follows that the referee's report and decision must be affirmed, and the claim allowed in accordance with his decision. If there be any dispute as to the exact date from which interest should be allowed, that question may be referred back to the referee to fix the exact amount of the claim and interest.