[No. 33662. *En Banc.* January 9, 1958.]

JOHN E. ERICKSON, *as Executor, Appellant,* v. ESTER ERICKSON· WAHLHEIM *et al., Respondents.*[1]

*Edmund J. Jones,* for appellant.

*Ralph B. Potts,* for respondents Wahlheim.

FOSTER, J.—In this quiet-title suit, both appellant John E. Erickson and respondent Ester Erickson Wahlheim claim title. Respondent Ester Erickson, now Ester Erickson Wahlheim by marriage to respondent Harold T. Wahlheim, purchased the real property in question by executory contract dated October 6, 1941, for the sum of thirty-six hundred dollars, eleven hundred dollars of which was paid in cash with the balance payable at the rate of thirty dollars a month. Her brother, John E. Erickson, the executor of the estate of their mother, Anna E. Taylor, sued to quiet the title to that property, and respondent, Ester Erickson Wahlheim, by cross-complaint, prayed that the title be quieted in her. From the judgment quieting the title in respondent Ester Erickson Wahlheim, the mother's executor appeals.

On September 20, 1945, Ester Erickson Wahlheim as-

[1]Reported in 319 P. (2d) 1102.

signed the contract to her mother, Anna E. Taylor, now deceased. The assignment included a bargain and sale deed by which respondent conveyed the property to her mother. The words of conveyance are "does bargain, sell and convey said described premises to said assignee." That instrument was acknowledged and recorded in the manner required by law for the acknowledgment and recording of deeds.

The court found that the original payment of eleven hundred dollars was made by the respondent Ester Erickson Wahlheim with her own funds; further, all subsequent installments of the purchase price were, likewise, paid by her with her own funds; and on March 7, 1946, she borrowed sixteen hundred odd dollars and paid the entire balance then due on the executory contract and received a fulfillment deed from the First Savings and Loan Association, to whom the vendor in executory contract had assigned her interest. This conveyance is a conventional warranty deed from the grantor savings and loan association to the grantee Ester Erickson. The actual payment was made by the decedent, to whom the savings and loan association delivered the deed. Thereafter, Mrs. Taylor also directed that the deed be recorded.

The court concluded that the acceptance of the fulfillment deed and the recording thereof by the mother was for the purpose of passing the title to respondent, and the only purpose of the assignment and bargain and sale deed was the daughter's desire "to assure her Mother while she lived or was single that she would have a home."

But this ignores the very positive provisions of RCW 64.04.010, which provides in part:

"Every conveyance of real estate or any interest therein, and every contract creating or evidencing an encumbrance upon real estate, shall be by deed."

After the delivery and recording of the bargain and sale deed, the title remained in the mother because real property can be conveyed only by deed.

Although the respondent pleaded an express trust, none was proved, and the court made no findings with respect to

any form of trust. Therefore, no question of trust is involved in this appeal.

■ The after-acquired title of the respondent under the fulfillment deed passed to her mother by the terms of Rem. Rev. Stat., § 10571[2] [cf. RCW 64.04.070], which declares if a person without title conveys property by deed and thereafter acquires title, the after-acquired title passes to the grantee.

Rem. Rev. Stat., § 10553 [cf. RCW 64.04.040], declares that a deed which, in the granting clause, contains the words "bargains, sells and conveys" is a bargain and sale deed. It was expressly decided in *American Sav. Bank & Trust Co. v. Helgesen*, 64 Wash. 54, 62, 63, 116 Pac. 837, that a bargain and sale deed conveys an after-acquired title.

Under such circumstances, there was no reason for Anna E. Taylor to object to the First Savings and Loan Association conveying to the respondent by warranty deed, because both by statute and decisional law that vested in her the fee.

The judgment is reversed, and the cause is remanded with instructions to quiet the title in the appellant.

MALLERY, DONWORTH, WEAVER, and OTT, JJ., concur.

FINLEY, J. (dissenting)—I believe a full consideration of all of the facts found by the trial court requires a result contrary to that reached by the majority. The trial court found:

1. The appellant, John E. Erickson, is the executor of the estate of Anna E. Taylor, deceased.

---

[2]"Whenever any person or persons having sold and conveyed by deed any lands in this state, and who, at the time of such conveyance, had no title to such land, and any person or persons who may hereafter sell and convey by deed any lands in this state, and who shall not at the time of such sale and conveyance have the title to such land, shall acquire a title to such lands so sold and conveyed, such title shall inure to the benefit of the purchasers or conveyee or conveyees of such lands to whom such deed was executed and delivered, and to his or their heirs and assigns forever. And the title to such land so sold and conveyed shall pass to and vest in the conveyee or conveyees of such lands, and to his or their heirs and assigns, and shall thereafter run with such land."

2. The respondent, Ester Erickson Wahlheim (daughter of the decedent), contracted to buy the real estate in question on October 6, 1941. She paid the sum of eleven hundred dollars and agreed to pay the balance of the purchase price in monthly payments of thirty dollars each. She made payments in such manner until she made a lump-sum final payment. Part of the funds she used were lent or given to her by one Thomas P. Huden.

3. Anna E. Taylor, the decedent, had an income of only thirty-five dollars per month, plus small payments she received from relatives as board. None of her money was used for any of the payments on the realty in question.

4. On September 20, 1945, after her marriage, respondent Ester Wahlheim executed an assignment of the real-estate contract *to her mother to allay the mother's worries that something might happen to her home.* Thereafter, respondent continued to make the monthly payments and, on March 7, 1946, made the final payment. The deed was made out to respondent, Ester Wahlheim.

5. Anna E. Taylor, the decedent, went to the bank which owned the real-estate contract on March 7, 1946; she received a vendor's fulfillment deed made out to respondent, Ester Erickson, and signed a receipt for the deed. Anna E. Taylor kept the deed for six or seven days, then she gave it to appellant and directed him to have it recorded, which he did.

6. Anna E. Taylor knew the deed was made out to Ester Wahlheim when she accepted it; *she had it recorded so that the land would pass to respondent, regardless of any question which might exist as to the legal title of the property.* She always described the land as belonging to her daughter, one of the respondents herein.

7. "The court further finds that Ester Erickson was the one child of Anna E. Taylor who was concerned with her Mother's welfare and that the court believes and finds that it was Ester Erickson's interest in her Mother that prompted her to make said Assignment, wishing to assure her Mother while she lived or was single that she would have a home; even after Ester Erickson was married. That this Assign-

ment was given for no other purpose and that said Anna E. Taylor never had any interest in said real estate and understood that she never had any interest and made it plain to all of her friends and relatives that the said real estate belonged to Ester Erickson. This, during the time the Assignment was made and at all times afterwards, up to within a few months of her death."

8. "That immediately after the death of Anna E. Taylor, that John E. Erickson, the Executor, moved into the real estate, although he had his own home in Seattle, Washington. That said John E. Erickson has no right to occupy said real estate."

The trial court concluded that title should be quieted in Ester Erickson Wahlheim.

It is obvious from the findings of the trial court, and furthermore, from a complete reading of the statement of facts, that the result reached by the majority is a very harsh one as to respondent.

This court has said many times that, if a judgment of the trial court can be sustained on any theory, such judgment will not be reversed on appeal. *Witzel v. Tena* (1956), 48 Wn. (2d) 628, 295 P. (2d) 1115; *Ferris v. Blumhardt* (1956), 48 Wn. (2d) 395, 293 P. (2d) 935; *Radach v. Prior* (1956), 48 Wn. (2d) 901, 297 P. (2d) 605.

I believe that the judgment of the trial court can be affirmed on one or the other of two alternative theories.

The findings of the trial court support a conclusion that the "assignment," which the majority denominates a bargain-and-sale deed, was in fact a nullity, because the parties never intended that title should thereby pass to Anna E. Taylor, the decedent; thus, there was no delivery. This court said in *Anderson v. Ruberg* (1944), 20 Wn. (2d) 103, 145 P. (2d) 890:

"Delivery in all cases is a question of intent, to be determined from the deed itself and the facts and circumstances attending its execution, including the words, acts, and conduct of the parties."

If the assignment be a nullity, then the "after acquired title" doctrine never comes into play.

The other theory is that of executed trust. Respondent

alleged that the decedent agreed to reconvey the property to respondent when the contract balance had been paid in full. Findings of Fact Nos. VI and VII of the trial court are, in essence, ultimate findings of the existence and execution of an express trust in real estate. Appellant's contention that the testimony upon which these findings are based contravenes the dead-man's statute is not crucial, because the findings are supported by the testimony of disinterested witnesses. In other words, the evidence does not preponderate against these findings, and they will not be disturbed on appeal. *Hovila v. Bartek* (1956), 48 Wn. (2d) 238, 292 P. (2d) 877.

When land is conveyed to a trustee upon an oral trust, the oral trust is unenforcible, but it is not void. If the trustee conveys the land to the beneficiary in performance of the oral agreement, the trust is executed and the statute of frauds is not applicable. *Gottstein v. Wist* (1900), 22 Wash. 581, 61 Pac. 715; *Robbins v. Robbins*, 89 N. Y. 251; *Richmond v. Bloch*, 36 Ore. 590, 60 Pac. 385; 1 Perry, Trusts (7th ed.) 70-71, § 76; 1 Scott, Trusts (2d ed.) 301, *et seq.*, §§ 42.3, 43.

The trial court's finding that Anna E. Taylor, *if* she had any title in the property, intended to transfer such title to the respondent, Ester Erickson Wahlheim, when she, Anna E. Taylor, had the deed recorded in the name of her daughter, Ester, is conclusive of this question, unless such a conclusion finds no support in the evidence. I think it is untenable to conclude that there is no support in the record for the finding—and the majority indicates nothing to the contrary.

The after-acquired-title doctrine, applied by the majority, originated in the common law as the equitable doctrine of estoppel by deed. Burby on Real Property (2d ed.) 482-486; 3 American Law of Property 842-846, § 15.19. The following quotation from the Harvard Law Review (22: 136-7), concerning this doctrine, is especially apropos in this case:

"It should always be recognized that in essence the cases on this general subject demand the application of equitable

principles and that a court of law in entertaining them can be justified only as it reaches an equitable result. *Recognition of the doctrine as a hard and fast rule of law has inevitably led to inequitable results.*" (Italics mine.)

The result reached by the majority in this case bears out the last sentence quoted from the above-mentioned article.

I recognize that we are dealing with a legislative codification of an equitable doctrine. But I believe the majority fails to recognize that, with respect to the common law, there are two types of statutes: (1) those passed to change the common law, and (2) those passed to restate in statute form the existing common law. Different rules of statutory construction apply to the two types of enactments. When considering statutes of the first type, the common law serves only as a jumping off place; it tells what the legislature meant to change. It is then encumbent upon this court to determine the extent of the change which the legislature meant to make. When considering statutes of the second type, the common law is the starting and stopping point in determining legislative intent. See 3 Horack (3rd ed.) Sutherland Statutory Construction 1-17, ch. 53.

"Among the objectives served by a codification of the law is the condensation of the principles and rules by which people are to be governed. The advantages of brevity and conciseness, however, embrace the corresponding inability of legislators to contemplate in detail every situation which may arise under the subject matter of a particular statute. In common-law jurisdictions this short-coming has been abridged to a large extent by the synchronization of common-law rules and maxims with the statutory law. In some cases the scope of the statute may be extended, and in others reduced by the operation of the common law. *Where a statute purports to restate the existing common law, the latter becomes an especially important factor in determining legislative intent. . . .*" (Italics mine.) Ibid., pp. 6-7.

I believe the after-acquired title statute is merely a restatement of the common-law equitable doctrine of estoppel by deed. I do not believe the legislature intended that the statute would be applied in cases such as this, in which its application leads to a manifestly inequitable result.

In the concluding paragraph of the opinion, the majority has attributed an astounding degree of knowledge of the "statute and decisional law" of this state to the decedent, Anna E. Taylor. I think it is much more plausible that, if the decedent claimed any title in the property, she would have demanded a deed *in her name* from the bank.

For the foregoing reasons, I believe the judgment of the trial court should be affirmed, and title quieted in Ester Erickson Wahlheim.

HILL, C. J., and ROSELLINI, J., concur with FINLEY, J.

---

September 24, 1958. Petition for rehearing denied.