[Nos. 36206-6-II; 36213-9-II;    Division Two.    August 5, 2008.]
    36603-7-II.

*In the Matter of the Estate of* KENNETH FRANK.

*In the Matter of the Estate of* CATHERINE H. FRANK.

DAVID K. FRANK, *Individually and as Personal Representative*, ET AL., *Appellants*, v. LAURIE McCLANAHAN ET AL., *Respondents*.

*Robert N. Windes* and *William A. Keller* (of *Moran Windes & Wong, PLLC*), for appellants.

*Ladd B. Leavens* and *Zachary Tomlinson* (of *Davis Wright Tremaine, LLP*), for respondents.

¶1 BRIDGEWATER, J. — David Frank appeals from the trial court's order declaring that article VII, section 2 of Kenneth

and Catherine Franks'[1] wills, bequesting real property known as Cranberry Lake, to the Frank Family Foundation (Foundation), did not adeem. The court's order declared that even if the estates acquired an interest in Cranberry Lake, the personal representative would have to distribute the property to the Foundation under article VII, section 2 of the wills. Based on that order, the trial court granted the Foundation's motion for summary judgment, reasoning that because the Franks' bequest under article VII, section 2 was valid, David had no remedy available against the Foundation in his professional negligence claims against it. David also appeals this summary judgment order in his negligence action. He maintains that the trial court erred because the article VII, section 2 bequest adeemed. We hold that the trial court properly found that article VII, section 2 did not adeem. In addition, we hold that the trial court properly granted the Foundation's motion for summary judgment because David has no remedy available against the Foundation in his negligence action.[2] Accordingly, we affirm.

## FACTS

¶2 Kenneth and Catherine Frank established the Foundation on December 30, 1993, as a Washington nonprofit corporation, organized under chapter 24.03 RCW. Initially, Kenneth and Catherine sat on the Foundation's board of directors. The Foundation qualified under Internal Revenue Code (IRC) section 501(c)(3) and thus was exempt from federal income tax under IRC section 501(a). There is some evidence that Kenneth and Catherine established the Foundation for the tax benefits. Nonetheless, the articles of incorporation indicate that Kenneth and Catherine estab-

---

[1] We refer to the parties involved by their first names, in order to be clear. We mean no disrespect.

[2] We make no ruling on whether David has a viable claim against the other professional defendants in the negligence action currently pending before the Mason County Superior Court.

lished the Foundation "exclusively for charitable, religious, educational, and scientific purposes." Clerk's Papers (CP) (No. 36206-6-II) at 517. They meant to "[p]reserve the Foundation property in its natural state for the use of youth groups for organized recreation and educational purposes." CP (No. 36206-6-II) at 517.

¶3 At the time they established the Foundation, Kenneth and Catherine Frank, together with their son David, owned a full section (640 acres) of Mason County land, commonly known as Cranberry Lake.[3] Kenneth and Catherine owned 560 acres and David, their only child, owned 80 acres. Immediately after creating the Foundation on December 30, 1993, Kenneth and Catherine conveyed four percent of their interest in Cranberry Lake to the Foundation. A year later, on December 28, 1994, they deeded all of their interest in Cranberry Lake, "together with all after acquired [sic] title of the grantor(s) therein" to the Foundation. CP (No. 36206-6-II) at 498. Then, in January 1995, David conveyed his interest in Cranberry Lake to Kenneth and Catherine by statutory warranty deed, which they properly recorded on January 24, 1995. Despite the after-acquired-property clause in the 1994 deed, Kenneth and Catherine subsequently executed another deed to the Foundation, conveying the land they acquired from David on December 23, 1997.

¶4 Meanwhile, on August 30, 1996, Kenneth and Catherine executed substantially identical wills.[4] Article VIII of each will acknowledged their creation of the Foundation. In addition, article VII, section 2 provided:

> All of my interest in Section 28, Township 21 North, Range 3 West, commonly known as Cranberry Lake, I give to my wife, provided she survives me by a period of thirty (30) days. In the event that she fails to survive me, or survives me and dis-

---

[3] Section 28, Township 21 North, Range 3 West.

[4] The parties filed substantially identical sets of pleadings and supporting documents in the estates of both Kenneth and Catherine. By agreement, counsel has not designated clerk's papers from Catherine's estate, so as to avoid unnecessary copying.

claims, my interest in this property shall be distributed to the Frank Family Foundation referenced in Article VIII below.

CP (No. 36206-6-II) at 240.

¶5 Kenneth and Catherine properly executed a first codicil dated October 2, 2000, a second codicil dated July 8, 2002, and a third codicil dated August 20, 2003. The codicils made substantial changes to the wills, including provisions affecting distribution of other items of real property, but none of the codicils affected distribution of Cranberry Lake. Kenneth and Catherine named David as their personal representative should they not survive each other by 30 days. They also named David to be the residual beneficiary.

¶6 At some point, the Internal Revenue Service (IRS) and the Foundation's attorneys began corresponding about the Foundation's tax classification. It is unclear how or why this correspondence began. But the correspondence clarified certain requirements under the IRC that the Foundation had to comply with to qualify under its intended tax-exempt classification. One such requirement involved personal use of Cranberry Lake. To qualify as a private foundation under the IRC, the Foundation had to restrict personal use of the property.

¶7 In light of this information from the IRS, the Foundation board began to think about how to deal with management of the cabin and property after Kenneth's and Catherine's eventual deaths. Kenneth and Catherine were pondering the same question. In 2003, Kenneth sent a letter to the board, inquiring about the legal use of the cabin after his eventual death. The board responded that the Frank family would likely be able to use the property if there was some reciprocal benefit to the Foundation. It stated that the family could continue to use the property, but they would have to deal with the board in terms of access and such.

¶8 Kenneth and Catherine, who had already sought independent counsel to investigate the Foundation's tax status and ramifications, became even more concerned. In

November 2003, their counsel sent a letter to the Foundation's board, setting forth their concerns about the Foundation from a tax perspective. Kenneth and Catherine's counsel also requested various documents from the Foundation during this time.

¶9 On December 14, 2003, Kenneth and Catherine sent a letter addressed to the Foundation directors, requesting their resignation.[5] As a result, the board held a meeting on January 23, 2004. And although the board notified Kenneth and Catherine of the meeting, they chose not to attend. Rather, their counsel and David attended in their place.

¶10 David presented the board with two powers of attorney, one that Kenneth executed and one that Catherine executed. The board then provided David an opportunity to speak at the meeting. According to board members, David expressed that the Foundation was not in the best interest of the Frank family; he sought to redeem Cranberry Lake from the Foundation; and he hoped to retire on the property and run it as a tree farm. The board was concerned that David was exercising influence over his elderly parents, that he desired to oust the board, and that he sought to redeem Cranberry Lake for his personal benefit.

¶11 On June 11, 2004, the Foundation held another board meeting and provided notice to all the directors, including Kenneth and Catherine. Kenneth and Catherine did not attend, nor did their counsel or David. Nevertheless, the board unanimously voted to remove Kenneth and Catherine from their positions as directors. In doing so, the board members expressed concern that Kenneth and Catherine could not continue to function effectively as board members due to their advanced age. At the time, Kenneth was in his late 90s and Catherine was in her late 80s.

---

[5] As of December 2003, the Foundation directors included Kenneth, Catherine, Norm Eveleth, Bill Batstone, Ron Godwin, Lyle Coleman, Patti Case, and Laurie McClanahan.

¶12 On November 4, 2005, Kenneth, Catherine, and David[6] filed a complaint (hereinafter referred to as the negligence action) in Mason County Superior Court against their longtime accountant, Laurie McClanahan; John Clees, an accountant and attorney; and Mary Gentry, an attorney (collectively referred to as professional defendants). The Franks also named the Foundation as a defendant.

¶13 In the negligence action, the Franks alleged that the professional defendants assisted Kenneth and Catherine in the conveyance of Cranberry Lake to the Foundation. They further alleged that through breach of duty, misrepresentation, or otherwise, the professional defendants induced Kenneth and Catherine to create the Foundation and convey Cranberry Lake to it. The Franks sought damages against the professional defendants for their alleged negligent misconduct.

¶14 The Franks additionally sought rescission of the deeds conveying Cranberry Lake to the Foundation. They alleged that the Foundation breached fiduciary duties owed, for example, by allegedly failing to comply with state law disclosure obligations, failing to timely qualify as a private operating foundation under federal law, and failing to carry on significant charitable activities. The Franks sought damages from the Foundation for these alleged breaches of fiduciary duties. They also sought an order to remove the Foundation directors from the board.

¶15 Kenneth died on November 15, 2005. Catherine died a few weeks later, on December 3, 2005. On December 30, 2005, David offered Kenneth's last will and testament, dated August 30, 1996, for probate in Mason County, including the three codicils. On January 20, 2006, he offered Catherine's last will and testament, also dated August 30, 1996, and the three codicils to Mason County for probate. The court appointed David personal representa-

---

[6] David joined the lawsuit as "attorney-in-fact," as an individual, and as a marital community with his wife, Patricia.

tive for both estates and he still serves in that capacity. David did not challenge Kenneth's and Catherine's last will and testaments or codicils before the probate court.

¶16 On November 13, 2006, the Foundation filed petitions in both Kenneth's and Catherine's probates under the Trust and Estate Dispute Resolution Act (TEDRA),[7] seeking an order declaring that if Kenneth's and Catherine's estates ever acquired any interest in Cranberry Lake, the personal representative would have to distribute the property to the Foundation under the specific devise set forth in article VII, section 2 of the wills. The Foundation filed a motion for summary judgment in the negligence action, based on the same reasoning. Specifically, it asserted that (1) David lacked standing to seek rescission of the deeds because, if rescinded, Cranberry Lake would vest in the estate and immediately be returned to the Foundation under the wills; (2) the Foundation owed no fiduciary duties to the Franks; and (3) each individual breach of fiduciary duty claim lacked merit. The Foundation also filed a second motion for summary judgment, asserting that the statute of limitations barred the negligence action.

¶17 In a consolidated hearing on February 5, 2007, the trial court heard arguments on the probate and negligence matters. It granted the Foundation's petitions, declaring that Cranberry Lake would vest in the Foundation under article VII, section 2 of the wills. Based on the probate decision, the trial court granted the Foundation's motion for summary judgment, finding that David, as personal representative and as an individual and/or marital community, lacked standing to seek a rescission of the Cranberry Lake conveyances. The trial court denied all other motions.[8]

¶18 David, as personal representative, timely filed a notice of appeal in the probate matters on April 4, 2007. Thereafter, he filed a motion for entry of final judgment

---

[7] Ch. 11.96A RCW.

[8] David filed a motion to compel mediation. The Foundation also filed a motion to remove David as personal representative of Kenneth and Catherine's estates.

under CR 54(b), as pertaining only to the Foundation, in the negligence action. David made this tactical decision so that he could appeal the probate action and the negligence action pertaining to the Foundation at the same time. The trial court granted that motion and David timely appealed both matters. This court consolidated the probate actions and the negligence action on appeal.

## ANALYSIS

¶19 David appeals the trial court's order granting the Foundation's petition in the probate matter. He also appeals the trial court's order granting summary judgment dismissing his rescission claims against the Foundation in the negligence action. We address each claim in turn.

## I. Probate Matter and Ademption

¶20 The trial court granted the Foundation's petition, finding that article VII, section 2 of Kenneth and Catherine's wills were not adeemed as a matter of law. We review rulings on issues of law de novo. *Bank of Am., NA v. Prestance Corp.*, 160 Wn.2d 560, 564, 160 P.3d 17 (2007).

¶21 "Ademption" occurs when a testator parts with the specific subject of a legacy during his lifetime, rendering the legacy inoperative. *In re Estate of York*, 133 Ohio App. 3d 234, 239, 727 N.E.2d 607 (1999). It has two distinct meanings in modern jurisprudence. 6 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON THE LAW OF WILLS § 54.1, at 265 (rev. treatise 2005). First, ademption by satisfaction occurs when a testator, during his lifetime, makes a gift or provides a substitute for a bequeathed item, evidencing an intention to revoke or cancel the bequest.[9] *York*, 133 Ohio App. 3d at 239. Second, ademption by extinction occurs when a thing specifically bequeathed no longer exists in the testator's estate at the time of death. *York*, 133 Ohio App. 3d at 239.

---

[9] Ademption by satisfaction is sometimes regarded as an advancement, although technically, an advancement is applicable only in cases where the testator dies intestate. *See* 6 BOWE & PARKER, *supra*, § 54.1, at 267.

¶22 In regard to realty, a devise of land cannot be adeemed under the common law except by conveyance of the same land. 6 Bowe & Parker, *supra*, § 54.37, at 327 (citing cases). Such a conveyance operates both as an ademption by extinction, because the testator does not own the land at the time of death, and an ademption by satisfaction, because the devisee receives, by deed, the property that was devised to him under the will. 6 Bowe & Parker, *supra*, § 54.37, at 327. For instance, if the testator devises a piece of realty to a legatee under his will and subsequently deeds all of his interest of that same property to the legatee before death, a court may conclude that an ademption occurred, thus rendering the devise inoperable.

A. Timing of the Foundation's Interest in Cranberry Lake

¶23 David first focuses on the timing and execution of the wills and inter vivos deeds conveying Cranberry Lake to the Foundation. He contends that article VII, section 2 of the wills adeemed because the Franks transferred a significant portion of Cranberry Lake to the Foundation on December 23, 1997, 15 months after Kenneth and Catherine Frank executed their wills. But this argument disregards the facts and ignores the relevant after-acquired-property clause included in the 1994 deed.

¶24 Washington's after-acquired-title statute permits a grantor to convey its future interest in property through a deed containing an after-acquired-title clause. RCW 64.04-.070; *see Erickson v. Wahlheim*, 52 Wn.2d 15, 17, 319 P.2d 1102 (1958). After-acquired-title clauses allow a grantor to convey a future title even though he does not hold title when he executes the deed. 17 William B. Stoebuck & John W. Weaver, Washington Practice: Real Estate: Property Law § 7.8, at 485 (2d ed. 2004). This is a well-established principle in Washington; it is also precisely what happened in this case.

¶25 In December 1994, Kenneth and Catherine transferred all of their then current interest "together with all after acquired [sic] title of the grantor(s) therein" to the Foundation. CP (No. 36206-6-II) at 498. Approximately one month later, David deeded his interest in Cranberry Lake to Kenneth and Catherine, who properly recorded that deed on January 24, 1995. Accordingly, the remaining interest in Cranberry Lake automatically passed to the Foundation in January 1995, when Kenneth and Catherine acquired title pursuant to the after-acquired-title language in the 1994 deed and RCW 64.04.070. *See Erickson*, 52 Wn.2d at 17.

¶26 The fact that Kenneth and Catherine later recorded another deed conveying the remaining interest to the Foundation in December 1997 is irrelevant. The Foundation had already acquired the Franks' interest in Cranberry Lake as of January 1995. Thus, the Foundation had already acquired 100 percent interest in Cranberry Lake before Kenneth and Catherine executed their wills, including the Cranberry Lake devise contained in article VII, section 2, on August 30, 1996. It is on this basis that we hold article VII, section 2, devising Cranberry Lake to the Foundation, was not adeemed.

## B. Ademption Prior to Execution of Wills

¶27 David alternatively contends that "ademption must occur before the will is made." Br. of Appellant (No. 36206--6-II) at 20. He therefore reasons that the Cranberry Lake devise, under article VII, section 2 of the wills, adeemed.

¶28 Generally, a legacy is not adeemed by events that occur before the testator executes the will. W.W. Allen, Annotation, *Satisfaction or Ademption of General Legacy by Inter Vivos Gift, Transfer, or Payment to the Legatee or Another*, 26 A.L.R.2d 9, 21 (1952) (citing cases). But a few courts have applied ademption to cases in which the facts claimed to have destroyed the bequest occurred before execution of the will at issue. Frequently, these cases involve a mistake, wherein the testator attempts to make a

bequest of property that he never owned and over which he never had power of disposition. 6 Bowe & Parker, *supra*, § 54.1, at 266; *see, e.g.*, *Keegan v. Norton*, 322 Mass. 158, 76 N.E.2d 1 (1947).

¶29 In *Keegan*, the ademption issue involved shares of stock. The testatrix's brother died intestate, leaving her, among other assets, 39 shares of stock in American Telephone and Telegraph Company. *Keegan*, 322 Mass. at 159. The personal representative transferred the shares into the testatrix's name and subsequently sold them. *Keegan*, 322 Mass. at 159. The testatrix endorsed the check for the proceeds to the personal representative, who then put the cash in his deposit box. *Keegan*, 322 Mass. 159. Months later, the testatrix executed her will, wherein she bequeathed " 'all my stock in the American Telephone and Telegraph Company.' " *Keegan*, 322 Mass. at 159. The testatrix then died within three months of executing her will. *Keegan*, 322 Mass. at 159.

¶30 The highest court in Massachusetts impliedly held that the legacy of the American Telephone and Telegraph Company stock had adeemed. *Keegan*, 322 Mass. at 160. The testatrix owned no shares of the stock at the time of her death, nor did the legatee acquire an interest under the will in the stock or proceeds of the sale. *Keegan*, 322 Mass. at 160. The court emphasized that the estate should be administered and settled in accordance with the will provisions, even though the testatrix may have forgotten that she did not own the shares at the time she executed her will. *Keegan*, 322 Mass. at 160. In other words, the court applied ademption because it was likely that she mistakenly bequeathed the stock in her will, given that she had little to no control over the stocks during her lifetime. *Keegan*, 322 Mass. at 160.

¶31 Likewise, in *In re Pearson's Will*, 182 N.Y.S.2d 129 (Sur. Ct. 1958), *petition denied*, 19 Misc. 2d 833, 185 N.Y.S.2d 971 (Sur. Ct. 1959), the surrogate's court invoked ademption because the testatrix mistakenly bequeathed shares of stock she did not own when she executed her will. There, the testa-

trix had exchanged her stock in a first insurance company for stock in a second insurance company before executing her will. *Pearson*, 182 N.Y.S.2d at 131. In her will, the testatrix bequeathed stock in the first insurance company to one legatee and stock in the second insurance company to a second legatee. *Pearson*, 182 N.Y.S.2d at 131.

¶32 The surrogate's court held that the stock from the first insurance company bequeathed to the first legatee was specific. It found that the testatrix owned no such stock when she executed her will. *Pearson*, 182 N.Y.S.2d at 131. The surrogate's trial court then noted that despite arguments asserted, there was insufficient evidence showing that the testatrix actually executed the will before the time she sold the first company's stock. *Pearson*, 182 N.Y.S.2d at 131. The surrogate's court strongly implied that the testatrix bequeathed the stock in the first insurance company by mistake. *See Pearson*, 182 N.Y.S.2d at 131. Accordingly, the surrogate court held that the devise of the stock in the first insurance company was adeemed; the legacy failed. *Pearson*, 182 N.Y.S.2d at 131.

¶33 Here, the record does not contain any evidence, nor does David assert, that Kenneth and Catherine mistakenly bequeathed Cranberry Lake to the Foundation. Moreover, as stated above, the majority view is that ademption applies in circumstances where the facts destroying the legacy occur *after* the will is executed. 6 Bowe & Parker, *supra*, § 54.1, at 266 (citing cases). This proposition is clearly supported by a leading ademption case, *Buder v. Stocke*, 343 Mo. 506, 121 S.W.2d 852 (1938).

¶34 In *Buder*, the Missouri Supreme Court addressed whether a testator's bequest of all his holdings in a certain company had adeemed. *Buder*, 343 Mo. at 519. The court ultimately held that the bequest had not adeemed because the company did not exist when the testator executed his will. *Buder*, 343 Mo. at 519. In reaching this holding, the court distinguished ademption by satisfaction from ademption by extinction. *Buder*, 343 Mo. at 519. It further stated

that ademption by extinction " 'is the extinction or with-holding of a legacy in consequence of some act of the testator . . . some act equivalent to revocation or indicative of an intent to revoke.' " *Buder*, 343 Mo. at 519 (alteration in original) (quoting 69 C.J. *Wills* § 2199, at 999 (1934)).

¶35 Washington has adopted the majority view that, for an ademption to occur, the facts destroying the legacy occur after the will is executed. *See In re Estate of Gherra*, 44 Wn.2d 277, 286, 267 P.2d 91 (1954) (stating that circum-stances that arise *subsequent* to the execution of a will that revoke or render it inoperative include ademption); *In re Estates of Doepke*, 182 Wash. 556, 47 P.2d 1009 (1935).

¶36 In *Doepke*, the Washington Supreme Court ad-dressed the character of a bequest of " 'the sum of $3[,]000, being the amount of life insurance left by my husband to me.' " *Doepke*, 182 Wash. at 558. In determining that the bequest was not specific and thus not adeemed, the Supreme Court characterized the doctrine of ademption, stating:

> "Ademption of a specific legacy is the extinction or with-drawal of it, in consequence of some act of the testator equiva-lent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it *subsequent to the will*, which prevents its passing by the will, from which an intention that the legacy should fail is presumed. *Kenaday v. Sinnott*, 179 U. S. 606, 617, 21 Sup. Ct. 233, 45 L. Ed. 339 [(1851)]."

*Doepke*, 182 Wash. at 563 (emphasis added) (quoting *Kramer v. Kramer*, 201 F. 248, 253 (5th Cir. 1912), *cert. denied*, 231 U.S. 753 (1913)).

¶37 The *Doepke* court's characterization of ademption comports with the theory underlying most jurisdictions' reluctance to invoke ademption. *Doepke*, 182 Wash. at 562. The *Doepke* court expanded on the underlying purpose by stating that a testator's conveyance of property after ex-ecuting his will is a presumed manifestation of his intent

that the specific legacy fail. *Doepke*, 182 Wash. at 562. Obviously, no such intent may be inferred if a court were to apply ademption when a testator executes his will *after* already disposing of the property. Further, *Doepke* is a Washington Supreme Court decision, is still good law, and we are bound by its precedent.

¶38 Here, Kenneth and Catherine executed their wills leaving Cranberry Lake to the Foundation nearly 18 months after they conveyed their entire interest in the property to the Foundation. They executed three subsequent codicils, none of which modified the Cranberry Lake bequest in article VII, section 2 of the wills. The legal conclusion we draw from these events is that Kenneth and Catherine intended to ensure that any remaining interest in Cranberry Lake that they did not transfer to the Foundation by inter vivos deed would pass to the Foundation under their wills. Our conclusion is further supported by the majority view, adopted in Washington, that ademption applies when the facts destroying a devise occur *after* a testator executes his will. *See Doepke*, 182 Wash. at 563.

¶39 Accordingly, we hold that the trial court did not err in the probate matter. Kenneth and Catherine's devises of Cranberry Lake to the Foundation under article VII, section 2 of their wills did not adeem.

## II. Negligence Action

¶40 David also appeals the trial court's order granting summary judgment when it dismissed his rescission claims against the Foundation in the negligence action. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We review a summary judgment order de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). As the party seeking summary judgment, the

Foundation bears the burden of establishing its right to judgment as a matter of law, and we must consider the facts and reasonable inferences from the facts in favor of David, the nonmoving party. *Hisle*, 151 Wn.2d at 860.

¶41 The trial court granted the Foundation's summary judgment motion, reasoning that even if David successfully rescinded the inter vivos deed conveyances, Cranberry Lake would be an estate asset and pass immediately back to the Foundation under article VII, section 2 of the wills. Neither party cites relevant Washington case law, nor did we find any Washington cases on point. But a Tennessee case, *Ledbetter v. Ledbetter*, 188 Tenn. 44, 216 S.W.2d 718 (1949), addresses this issue and is illustrative of the proper outcome.

¶42 In *Ledbetter*, the plaintiffs alleged that the defendant, their brother, had wrongfully induced their incompetent mother to convey property to their brother. *Ledbetter*, 216 S.W.2d at 719. The siblings sought an order to set aside the deeds conveying the property. *Ledbetter*, 216 S.W.2d at 719. The brother responded that his mother executed a will naming him as sole beneficiary of the estate, then argued that even if the court were to set aside the inter vivos deed, the siblings would have no interest in the real property because he would inherit it under the will. *Ledbetter*, 216 S.W.2d at 719. He also argued that his siblings lacked standing to bring the action because they had no remedy. *Ledbetter*, 216 S.W.2d at 719. The court agreed and dismissed the action. *Ledbetter*, 216 S.W.2d at 721.

¶43 Here, as in *Ledbetter*, David has no remedy. Even if he were to succeed in rescinding the inter vivos deeds conveying Cranberry Lake to the Foundation, he would ultimately have no interest in the property because the Foundation would inherit it under article VII, section 2 of the wills.[10] Thus, he lacks standing to maintain the negligence action against the Foundation because he has no

---

[10] We note that David failed to contest the validity of the wills during probate. And we see no circumstances under which we can render the unambiguous language of article VII, section 2 of Kenneth's and Catherine's wills inoperative.

remedy. The trial court properly granted the Foundation's motion for summary judgment, dismissing it from the negligence action. We find no error.

## ATTORNEY FEES

¶44 On appeal, the Foundation seeks attorney fees from David, as personal representative of the estates, citing RAP 18.1(a) and RCW 11.96A.150. RCW 11.96A.150(1) states:

> Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

¶45 RCW 11.96A.150 provides the court broad discretion to award necessary and reasonable fees. The party seeking attorney fees bears the burden of proving reasonableness of fees requested. *In re Estate of Morris*, 89 Wn. App. 431, 434, 949 P.2d 401 (1998).

¶46 Here, we find that the Foundation has met its burden. We hold that the Foundation is entitled to reasonable attorney fees and expenses incurred in this appeal. Therefore, we hold that David, as personal representative of the estates, must pay reasonable attorney fees and

---

*Gherra*, 44 Wn.2d at 286 (listing circumstances under which an unambiguous will provision is rendered inoperative in the absence of a will contest, including ademption). As stated above, the bequest in article VII, section 2 of Kenneth's and Catherine's wills did not adeem.

expenses that the Foundation incurred on appeal. *See Morris*, 89 Wn. App. at 434; *see also* RCW 11.96A.150.

¶47 Affirmed.

HOUGHTON and QUINN-BRINTNALL, JJ., concur.

Review denied at 165 Wn.2d 1030 (2009).